**JOHN BLUE COMPANY, Incorporated, Appellant,**

v.

**DEMPSTER MILL MFG. CO., Appellee.**

**No. 16179.**

United States Court of Appeals
Eighth Circuit.

March 15, 1960.

David E. Varner, Washington, D. C. (C. Willard Hayes, Washington, D. C., E. G. Garvey, Omaha, Neb., and Cushman Darby & Cushman, Washington, D. C., and Crawford, Garvey, Comstock & Nye, Omaha, Neb., on the brief) for appellant.

Ferd Bing and Thomas F. McWilliams, Chicago, Ill. (Mann, Brown & McWilliams, Chicago, Ill., on the brief), for appellee.

Before GARDNER and VOGEL, Circuit Judges, and MICKELSON, District Judge.

MICKELSON, District Judge.

This is a patent infringement action brought by the plaintiff, John Blue Company, Inc., an Alabama Corporation, against the defendant, Dempster Mill Mfg. Co., a Nebraska Corporation, alleging the infringement of Patents No. 2,-696,785 and No. 2,771,846. The trial court held both patents invalid but no appeal was taken from the trial court's ruling regarding Patent No. 2,771,846. This appeal is from the judgment and findings of the trial court that plaintiff's Patent No. 2,696,785 (hereinafter called the Blue and Johnston Patent) is invalid on two grounds: (1) That the joinder of Johnston as a joint inventor after the original issue of the patent here in question was not proper under Title 35 U.S. C.A. § 256; and, (2) That the Blue and Johnston Patent did not involve invention. The trial court's memorandum opinion is reported in D.C.Neb.1958, 172 F.Supp. 23. The parties will be referred to as they were designated in the trial court. The question of infringement is not involved in this appeal because of the findings and judgment of the trial court that the Blue and Johnston Patent was invalid. The Blue and Johnston Patent relates to a device for the metering and regulation of the flow of anhydrous (liquefied gas) ammonia as it is applied to the soil for fertilizing purposes.

■■ The findings of the trial court will not be set aside unless clearly erroneous, and due regard will be given to the opportunity of the trial court to judge of the credibility of the witnesses. Rule 52(a) F.R.Civ.P. 28 U.S.C.A. A finding of fact by a district court is not "clearly erroneous" so as to justify this court in setting it aside unless it is unsupported by substantial evidence, contrary to the clear weight of the evidence, or induced by an erroneous view of the law. Sbicca-Del Mac, Inc. v. Milius Shoe Co., 8 Cir., 1944, 145 F.2d 389; Sears, Roebuck & Co. v. Talge, 8 Cir., 1944, 140 F.2d 395; Gasifier Mfg. Co. v. General Motors Corp., 8 Cir., 1943, 138 F.2d 197.

The facts as found by the trial court and as supported by substantial evidence in the record, insofar as they are pertinent to this appeal, are as follows:

Prior to the year 1948, plaintiff was a well established manufacturer of wheel-driven distributors for dry or solid fertilizers. This machinery could be pulled by tractor or animals, and plaintiff found most of its business in the cotton fields.

During 1947 and the early part of 1948, interest in the use of anhydrous ammonia as a fertilizer was running high due to a shortage of solid fertilizers. Early experimentation in the use of anhydrous ammonia as a fertilizer and particularly on how to apply it to the soil in known and accurate amounts was carried on by Mississippi State College at its Delta Experimental Station.

In February of 1948, John Blue, president of the plaintiff company, together with his son, James, and W. D. Tucker, Jr., general manager of plaintiff, made a trip to the experiment station, and on this trip Blue conceived a metering apparatus for applying anhydrous ammonia to the soil as a fertilizer. This original conception resulted in Patent No. 2,594,-284, application filed December 21, 1948, issued April 29, 1952 (hereinafter referred to as the Blue Patent). The Blue Patent is not involved in this action except as defense material upon the basis of which lack of invention in the Blue and Johnston Patent is urged. On the occasion of this trip to the experiment station, Blue made sketches showing his conception of a tractor-mounted adjusta-

ble stroke metering pump driven from the wheel of a tractor, acting to meter the anhydrous ammonia and to feed the same to ground tools for application to the soil. Upon his return to plaintiff's plant at Huntsville, Alabama, Blue turned the sketches over to his son, who made drawings thereof, and these drawings formed a good representation of the Blue concept. No pump was ever built in conformity with these drawings; however, the concept was subsequently used as the basis for the Blue and Johnston Patent here in suit. The Blue concept therefore established the threshold upon which the work of Blue and Johnston began.

After Blue and Tucker returned from the experiment station, it was decided that plaintiff would make an attempt to build a mechanical metering device for anhydrous ammonia. Plaintiff then had no skilled engineers in its employ and did not possess any precision manufacturing equipment necessary for the development and production of an accurate pump-type metering device for anhydrous ammonia.

There existed in Huntsville, Alabama, at that time the General Fluid Machinery Corporation (hereinafter referred to as General Fluid), which had been organized in 1945 for the manufacture of domestic water pumping systems for deep wells, and they had also gone into the manufacture of hydraulic jacks and related equipment. Douglas Johnston, a highly educated engineer of wide experience in high pressure hydraulic work, and in the design and manufacture of pumps, was the president and chief engineer of this corporation. The corporation was equipped with both engineering and precision manufacturing facilities, but due to serious financial difficulties was looking for contract or job work.

It was decided that the plaintiff would secure the services of General Fluid to do further design work on a metering device for anhydrous ammonia. Blue, Tucker and Johnston made another trip to the experiment station primarily to enable Johnston to become acquainted with the problems involved in the handling and use of anhydrous ammonia. As a result of this trip and by agreement between Johnston and Tucker, as general manager of the plaintiff, the design work that was to be done by General Fluid was undertaken. Work progressed rapidly, and after preparation of certain drawings under the supervision of Johnston, a pump was made and subsequently tested at the experiment station in August of 1948. It was found that the pump "had some bugs" and changes were thereafter made. The rebuilt pump was demonstrated at the experiment station the following month. In this rebuilt pump, jointly designed and built by Blue and Johnston during the spring and summer of 1948, the original Blue concept of a wheel-driven, adjustable stroke metering pump had been changed in the following respects: (1) A pressure balanced valve had been substituted as the outlet valve in place of the spring-biased type of valve usually employed in pumps; (2) A vent had been added for discharging the accumulated ammonia from the pump cylinder to allow the pump cylinder to fill with liquid ammonia; and (3) A heat exchanger had been added to cool the incoming liquid ammonia and minimize the possibilities of flashing or bubbling. This was essentially the pump described in plaintiff's Patent No. 2,696,-785, the Blue and Johnston Patent.

The application for a patent on the Blue and Johnston built pump was originally prepared by plaintiff's attorneys naming Blue and Johnston as joint inventors. The name of Johnston was stricken from the patent application by Mr. Tucker, and the application submitted to The United States Patent Office on March 11, 1949, by Blue as the sole inventor. Letters Patent No. 2,696,785 were issued on December 14, 1954, to plaintiff, Blue having assigned his rights therein shortly after the application was filed.

After the patent was issued, and after the defendant had been charged with infringement, but before this case was filed, application was made under the provisions of Title 35 U.S.C.A. § 256 to

the Commissioner of Patents, and a certificate was issued adding the name of Johnston as a joint inventor with Blue. At the same time Johnston assigned all of his rights in the patent to plaintiff.

Plaintiff's first assignment of error on this appeal is the finding and conclusion by the trial court that the omission of Johnston's name as a joint inventor was not such an error as could be corrected under the provisions of Title 35 U.S.C.A. § 256. In view of our conclusion hereinafter expressed that the judgment of the trial court should be affirmed on the ground that the Blue and Johnston Patent did not involve invention and was therefore invalid, we do not deem it necessary to decide this point.

We therefore pass to the second point involved on this appeal, namely, the decision of the trial court that the Blue and Johnston Patent in suit is invalid because it lacked patentable invention. As hereinbefore stated, the original concept of a tractor-mounted adjustable stroke metering pump driven from the wheel of a tractor, acting to meter anhydrous ammonia and to feed the same through ground tools for application to the soil as a fertilizer, was that of Blue. Johnston had no part in this original conception, and the conception was reduced to drawings before Johnston became associated with Blue. The trial court found that the Blue and Johnston Patent was merely the basic pump conceived solely by Blue modified by the addition of three components, namely, (1) a pressure balanced valve, (2) a venting device, and (3) a heat exchanger. The court concluded that the assembly of these well known components to "iron out the bugs" in the pump described in Blue's earlier Patent was not a patentable invention; that Blue and Johnston had merely brought together segments of prior art; that nothing had been added to the stock of knowledge, and to allow a monopoly on this aggregation would diminish the resources available to skillful men.

 In applying 35 U.S.C.A. § 103, this court follows the standards of patentability set out by the United States Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. There, 340 U.S. at pages 152, 153, 71 S.Ct. at page 130, the Court said:

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

If a trial court has failed to apply proper legal standards in determining the presence or absence of invention, its finding upon that issue will be reversed on appeal as clearly erroneous. Caldwell v. Kirk Mfg. Co., 8 Cir., 1959, 269 F.2d 506; Koochook Co. v. Barrett, 8 Cir., 1946, 158 F.2d 463, 465; Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., 8 Cir., 1945, 148 F.2d 497, 502–503. We do not find error in the trial court's findings or application of legal standards.

We next discuss the utility of the three components and the prior knowledge of their respective arts.

### The Pressure Balanced Valve

This valve is a bypass line from the pumping chamber to a chamber behind the outlet valve. Thus, the pressure from the ammonia is the same on both sides of the outlet valve. With the pressure equalized, a relatively light spring holds the valve shut until hit by the piston. If

a balanced valve were not used, a much more powerful spring would be necessary to hold the valve shut when the ammonia pressure built up, and a much more powerful piston thrust would be needed to open the valve. A spring, without this equalized pressure, was contemplated in the Blue concept, and it appears undisputed that it was a substitute for the spring-biased outlet valve of the Blue Patent. Johnston was familiar with a balanced valve and its operation (Johnston's own Patent No. 2,508,609), and using it for the first time as an outlet valve does not involve invention. An explanation of a pressure balanced valve appears in a 1941 engineering encyclopedia, and in a mechanical dictionary published in 1882, which dealt with steam pressure. We agree with the finding of the trial court that the utilization of this valve involved nothing more than the ordinary skill in the art.

### The Venting Device

The venting device is merely a device to let the air or gaseous ammonia out of the pump chamber, to avoid the problem of vapor lock or gas lock. It also serves to prime the pump with liquid and starts the cooling action of the heat exchanger, so that the pump will meter accurately at the beginning of a fertilizer run. We agree with the findings of the trial court that there was nothing new or novel in this venting device, either in the principle or its application.

### The Heat Exchanger

The idea of a heat exchanger was not new when Blue and Johnston began their work together. A heat exchanger on an anhydrous ammonia applicator was known as early as 1948 and was on the device manufactured by the New Holland Company, Baggette Patent, et al., No. 2,612,760, application filed December 9, 1948. The Kniskern Patent, No. 2,007,-251, application dated April 14, 1934, had a heat exchanger. Other patents are cited by the defendant showing prior knowledge and art, but we see no reason for prolonging this opinion with a discussion of them. The heat exchanger was not new to Blue and Johnston and there was no inventive genius in the application they made of it. Nothing was added to the total stock of knowledge by them either in its use or by its construction. See, Boston Metals Co. v. Air Products, Inc., 4 Cir., 1951, 193 F.2d 535, holding Anderson Patent, No. 2,480,093 cited here as prior art invalid for lack of invention.

■ The plaintiff argues that the trial court erred in considering the Blue Patent as an anticipation of the Blue and Johnston Patent and as prior art, because the Blue Patent was not issued until subsequent to the filing of the application for the Blue and Johnston Patent. These two applications were co-pending. It is true that the application for the Blue Patent cannot be considered as prior art in the technical sense, but it is a widely recognized rule that the application for such patent can nevertheless be used as defense material to prove that Blue and Johnston were not the original and first inventors or discoverers of the metering pump described in their patent. Permo, Inc. v. Hudson-Ross, Inc., 7 Cir., 1950, 179 F.2d 386; Gasifier Mfg. Co. v. General Motors Corporation, 8 Cir., 1943, 138 F.2d 197. And such appears to be the way the trial court considered it.

■ The plaintiff further contends that the Blue and Johnston pump was reduced to practice prior to the filing of the application for the Blue Patent and that therefore the Blue application cannot be considered as defense material against the Blue and Johnston Patent. We think it can be stated, based upon the findings and conclusions of the trial court, and upon our review of the record in this case, that the pump described in the Blue Patent and the pump described in the Blue and Johnston Patent were reduced to practice simultaneously. The Blue and Johnston pump was nothing more than the original Blue pump modified by the addition of the three components hereinbefore discussed, and this modification did not constitute patentable invention. The mere aggregation of these components which in the aggrega-

tion perform or produce no new or different function or operation than that theretofore performed or produced by them is not patentable invention. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 151, 71 S. Ct. 127, 95 L.Ed. 162.

The trial court had before it a large volume of documentary and expert evidence introduced by the defendant to show prior knowledge and art, which we do not deem necessary to refer to in detail. Suffice it to say that such evidence constituted a sufficient evidentiary basis for the findings that the Blue and Johnston Patent was invalid for lack of invention. The credibility of expert witnesses and the weight of expert testimony is ordinarily for the trier of the facts to determine. Gasifier Mfg. Co. v. General Motors Corporation, 8 Cir., 1943, 138 F.2d 197.

The judgment of the trial court is affirmed.