**Sid STREET, Jr., Appellant,**

v.

**Arno A. APEL, Appellee.**

No. 15633.

United States Court of Appeals
Eighth Circuit.

Jan. 2, 1957.

Sam Mandell, Kansas City, Mo. (S. David Trusty and Popham, Thompson, Popham, Mandell & Trusty, Kansas City, Mo., with him on the brief), for appellant.

Edward I. Baker, Atlantic City, N. J., for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken from a judgment in a patent infringement suit which determined that Letters Patent No. 2,126,304, covering the hull of a speedboat, issued to Adolph E. Apel and plaintiff August 9, 1938, and owned by plaintiff was valid and infringed, especially as to its claims 5, 8 and 10, by racing boat hulls made and sold and caused to be made and sold by defendant, Sid Street, Jr., and awarding damages against him for said infringement. He contends that the court erred in finding and concluding that his boats, which were made by Richard Hallett infringed the plaintiff's said patent.

582

### The Evidence.

As shown by the Letters Patent, the plaintiff described his invention and defined his claims as follows:

"Our invention relates to new and useful improvements in boats, and more particularly to a boat that is capable of extremely high speed and especially adapted for racing.

"One of the objects of the present invention is to provide a specially designed hull so that the bottom offers relatively small resistance and the efficiency and speed of the boat will be comparatively high as compared with the ordinary displacement boats or hydroplanes.

"A further object of the invention is to insure a maximum amount of air passing under the bottom of the boat and so confined and guided that, in effect, the boat travels over a large compressed volume of air to thereby reduce the coefficient of friction between the boat and the water.

"Still another object of the invention is to construct, at the forward part of the boat, two stabilizers, features of which are to hold the boat on its correct planing angle to thus attain a minimum of incident resistance; to give the boat added breadth of beam; to increase its stability; and concentrate the air under the bottom of the boat, resulting in an air lift to the hull proper.

"Still another object of the invention is to construct the bottom of the hull together with the stabilizers as to substantially provide a three-point suspension in that the boat rides on the two stabilizers and on the stern section.

"Still another object of the invention is to provide a boat with these two stabilizers to not only give added breadth to the beam and increase its stability, but also to entrap more air than would be entrapped by the ordinary hull to thus further concentrate the air under the bottom of the boat.

"Still another object of the invention is to provide a boat with a specially designed bottom, stabilizers, and vertical fins that are attached to the inside walls of the stabilizers to further help concentrate and entrap the natural flow of air gained by the momentum of the boat under way as well as to prevent the boat from skidding.

"Still another object of the invention is to provide a speed boat, as above described, together with vertical fins, that may extend from the stabilizers aft to or almost to the stern transom, of the same depth as the stabilizers fastened to the inner chine and tapering off to nothing at the stern transom, so that the air entrapped under the bottom is concentrated in order to retain the compressed air lift as long as possible.

"With these and other objects in view, the invention consists in certain new and novel features and combination of parts, as will be hereinafter more fully explained and pointed out in the claims.

\* \* \* \* \* \*

(p. 2)

"Having thus described our invention, what we claim as new and desire to secure by U. S. Letters Patent is:

"1. A speed boat hull having a bottom, the forward end of the bottom being concave and flattening out toward the stern, stabilizers at the bow of the boat and extending about amidships, the said stabilizers having their under surfaces merging with the bottom of the hull near their forward ends and extending below the surface of the bottom at their rear ends.

"2. A speed boat hull having a bottom, the forward end of the bottom having a double concavity, a single concavity near the stern and flat at the stern, stabilizers on the opposite sides of the bow of the boat and extending about amidships, the stabilizers having their forward under surfaces merging with the bottom of the hull and extending downwardly below the surface of the bottom at their rear ends.

"3. A speed boat hull having a bottom, the forward end of the bottom having a double concavity changing in contour to a single concavity as it approaches the stern, the bottom at the stern being flat, stabilizers formed on the opposite sides of the bow of the boat and extending about amidships, the stabilizers having their forward under surfaces merging with the bottom to thereby add a greater beam to the hull, and the under surfaces of the stabilizers extending downwardly below the surface of the bottom at their rear ends to thereby confine the air beneath the hull.

"4. A speed boat hull having a bottom, the bottom being concave at its forward end and flattening out to a plane surface at the stern, means extending from the bow to amidships on the opposite sides of the hull to add greater beam to the hull, and said means extending at their rear ends below the outer surface of the bottom to form a two-point suspension for the forward portion of the boat and the third point of suspension being at the stern.

"5. A speed boat hull capable of being suspended at three points when in motion including extension means on the opposite sides of the bow and extending nearly amidships, said means extending from points above the keel line to points below the bottom, said means confining and guiding the air along the bottom to the stern, and the bottom at the stern forming the third point of support to thereby provide a maximum air lift to the hull when the boat is in movement.

"6. A speed boat hull having its bottom at its forward end flaring outwardly in opposite directions from the keel line and stabilizers at the bow of the boat having their under surfaces starting above the keel line and then merging with the bottom surface, and the stabilizers then extending below the keel line and the bottom as they approach their rear ends to confine the air under the hull, fins secured beneath the hull to said stabilizers and near the rear ends of said stabilizers to further confine the air beneath the hull and prevent the boat from skidding, the bottom of the hull flattening out at its stern whereby the boat is suspended on the stabilizers and on the stern and the air will be forced longitudinally from the bow to the stern to provide a maximum air lift and the boat supported by the said stabilizers and said stern.

"7. A speed boat hull having its bottom at its forward end flaring outwardly in opposite directions from the keel line, stabilizers formed on the opposite sides of the bow and extending about amidships, the under surfaces of the stabilizers merging with the under surface of the bottom near their forward ends and extending below the bottom at their rear ends to thereby form a confined passageway for the air beneath the hull, the bottom flattening out as it approaches the stern whereby the passageway for confining the air beneath the hull decreases in depth from its

(Col. 2) forward end to its rear end, and additional fins secured to the inner side surfaces of the stabilizers to additionally confine the air and prevent the boat from skidding and the boat adapted when in motion to be supported by the two stabilizers and the under surface of the bottom at the stern.

"8. A speed boat hull having additional supporting means built out at its sides at the bow, said supporting means extending below the under surface of the bottom to form a restricted passageway for air, additional fins extending from the rear ends of the stabilizers to the stern to additionally confine the air beneath the hull to provide a maximum air lift and retain the air beneath the hull for as long a time as possible.

"9. A speed boat hull having a double concavity at its forward portion, a single concavity amidships and flat at the stern transom, additional means for increasing the beam at the forward part of the bow and for directing the flow of air beneath the hull and pocketing the air until it passes out at the stern.

"10. A speed boat hull having stabilizers formed about the bow to increase the beam of the hull and terminating about amidships, said stabilizers extending from the chine line at the forward end to below the bottom at their rear ends, and said stabilizers changing their bottom angularity substantially seven-eighths of an inch to the foot throughout their length and forming points of suspension for the forward portion of the hull.

"11. A speed boat hull, the bottom of which is concave at its forward end and flat at the stern, non-trip chines, stabilizers at the bow and extending about amidships, said stabilizers extending from a point from the chine line at their forward ends to a plane beneath the bottom at their rear ends to thereby assist in entrapping the air under the concave bottom and support the boat at its forward portion, means on the bottom extending from the rear ends of the stabilizers toward the stern for additionally assisting in confining the air, and the boat supported by the stabilizers and at its stern."

Between 250 and 300 boats were built according to the patent, to each of which was attached a notice that the design of the boat was patented by plaintiff. Plaintiff's exhibit 3 is a proof of an advertisement of plaintiff in a magazine, "Motor Boating," January, 1950, issue, advertising the "three-point suspension" patented principle of his boats. Plaintiff testified that in August, 1951, he examined a hull raced by defendant Sid Street, Jr., at Redbank, New Jersey. It was similar to the boat covered by his patent in that it had stabilized appendages attached to the outside of the hull on and beyond the hull itself extending

deeper than the bottom of the boat between the stabilizers and forming a concave section between the two stabilizers. The stabilizers protruded below the bottom of the boat and acted as planing surfaces for the purpose of chopping air under the bottom and creating greater speed. Plaintiff Apel testified that he thoroughly examined a boat which the defendant Sid Street, Jr. had sold to a Mr. William Ritner when that boat was brought to plaintiff's shop for repairs after a race and that boat had stabilizers or pontoons on the outside of the hull and that the patented boat and the Ritner boat functioned in exactly the same way.

Plaintiff offered in evidence his Exhibits 4 and 5, advertisements of defendant Sid Street, Jr., in racing periodicals "Motor Boating" and "Propeller," offering "Special Built Hydroplanes" for sale.

Plaintiff's Exhibit 6 is a page from the January, 1950 issue of "Yachting" showing a picture of the boat "Z-Z-Zip" owned and operated by defendant Sid Street and a news report that with the "Z-Z-Zip," "with hull by Hallett," Street dominated all fields.

On cross-examination, plaintiff testified: "Defendant's Exhibit 1 (deposited with the clerk of this Court) is a model which fairly and accurately represents the hull design covered in plaintiff's Letters Patent." It was referred to as the Ventnor boat. His patent makes no claims to the use of air lift from the top boat surface, that is not a part of his patent. The basic idea of the hull designed and patented by him was to entrap and enclose and compress the air underneath the hull, that was one of his major objectives, in accordance with his claims. Each of the objects of each of the claims of his invention has one principle in mind, that is, to entrap air under the bottom of the boat so as to give it air lift. That the purpose of the concavities in his design was to entrap air under the boat as it moves forward, and compress the air under the boat and pass it out at the stern. That is the reason his patent covers the fins which extend back

from the stabilizers, to keep the air coming out of the sides, the primary objective of his design was to create a hull, which, when going forward through the water, would entrap and compress the air underneath the hull and pass it out at the stern. Plaintiff testified that on the accused Hallett boat, 70 per cent of the air comes out underneath the bottom at the stern and 30 per cent from the sides of the boat. Plaintiff's boat, when traveling at racing speeds, is supported at three points, on the stabilizers and on the stern of the boat, when it moves at high speed. There is no claim in his patent that the stern of his boat rides out of the water and is supported by air; but plaintiff advertised his boat and promulgated it as a three point suspension. He said a two point boat wouldn't work. It has to be three point in order to have longitudinal stability.

Plaintiff further testified on cross-examination that defendant's Exhibit 2 (deposited with the Clerk of this Court) was a fair representation of the Hallett hull, its bottom flat, as flat as a washboard between the pontoons. Plaintiff did not know that Hallett designed his hull so that the top decking would act like air foil or an airplane and give it lift.

Defendant Sid Street, called by plaintiff as his witness, testified: He is engaged in the automobile business in Kansas City, Missouri. He had met Mr. Hallett who said he would give him $100.00 a hull on each hull sold outside of California if Mr. Street would advertise for Hallett. To the best of his memory, nineteen Hallett hulls were sold to others and Mr. Street used an additional eight himself. Of the total 27 boats, Mr. Street received $100.00 a piece on fourteen. He was not licensed by Apel to use or sell any of the boats.

On cross-examination Mr. Street testified that he had realized no profit of any kind in connection with his handling of the 27 hulls, he was racing the boats for sport, his racing further established him as a motor dealer and he obtained benefit from the advertising.

Norman Lauterbach testified for plaintiff: He is a naval architect and marine engineer, and associated in the boat business with plaintiff for about 12 years. Both defendant's exhibits 1 and 2 are constructed with pontoons on the side in generally the same relative position, but the pontoons in defendant's exhibit 2 are slightly farther apart by comparison. Defendant's exhibit 1 shows a warped bottom. Exhibit 2 has a relatively flat bottom. With the Apel design there is no vacuum under the hull, the main feature with boats of the so-called three point configuration is that it allows air to pass under the boat instead of being forced to expel itself out from around the sides of the triangle of the boat; the Apel boat corrected faults in previous designs by removing the planes from beneath the boat and putting them out in the air stream, eliminating the vacuum which would normally exist had they been under the boat, achieving performance in a manner which had never been achieved before. The air is not actually trapped under the hull, it passes freely beneath the hull and makes it impossible for a vacuum to build up.

Richard Hallett testified for defendant. He is 41 years old, a mechanic without any special technical schooling of any kind, residing at Downey, California. He has raced motor boats continually since 1935. He first saw the Ventnor boat covered by the Apel patent around 1941, at a racing meet at Long Beach. He saw that at high speed it rode on three points, the two pontoons and the back end. All Ventnor boats ride in the same way at high speeds.

In 1941, while working at the Douglas Aircraft plant at Long Beach, California, he saw some English Mosquito airplanes and discussed them with a very good engineer at the plant, and it occurred to Hallett to apply the same principle of the airplane wing to the top of a hull of a boat to increase its lift. In the Apel hull a concave bottom entraps air to hold compression on the transom which, to Hallett's knowledge, creates air friction. His own hull, riding at its correct level position, does not entrap air under the boat and its riding surfaces only tend to hold the boat off the water in position to make it frictionless, increasing the speed so greatly that at the present time his hulls hold practically every record in the classes in which he builds them.

He built his first hull with the rounded front and turret lift in 1941. The rounded front end definitely increased the lift. About a year later, in his boat, the "Dynamite," he broke the world record, attaining a speed of 73 to 74 miles an hour, about 10 miles faster than the previous record.

The front of the Apel hull comes to a point, distributing the air in a manner which gives no deck lift, whereas his own hull has a rounded front. In his design no air is compressed under the boat. The Apel boat holds air under it and runs at a three-point suspension. In his boat there are no runners affixed to the pontoons or traps except possibly only a few inches back, to extend the strength of the runners, and not to entrap the air.

Defendant's exhibit 4 is a photograph of his Hallett hull showing how his boats operated at racing speed at two points, the two forward runners.

Outrigger boats go back clear before his days. An outrigger is actually a two point boat or a three point boat and anybody could think of moving those pontoons. Anybody who studied it could move those points in. Shell pontoons were added to row boats to keep them from tipping, and that in effect is what pontoons are. That is what he applied to his design. There is no concave bottom to his own hull, that is a part of the Apel design. Hallett did not apply for letters patent on his design.

On cross-examination Mr. Hallett testified that the increased speed of his boat is due to aerodynamic lift.

Tom Cooper testified on behalf of defendants. He is engaged in the transportation business in Kansas City and has been a racing boat enthusiast since 1935, and has operated Ventnor boats covered by the Apel patent. At high

speeds they rode on three points on the two pontoons and the back end of the boat. He has driven a Hallett hull. At racing speeds it is suspended at two points, the pontoons. At high speed the front end of the Hallett hull comes down and the back end comes up so that the boat rides at just about a level position, the back end about eight inches out of the water. That was not true of the Ventnor boats.

On cross-examination Mr. Cooper testified that the Hallett hull has an aerodynamic lift by reason of the aerodynamic construction of the top deck in the bow section. That is the reason for its increased speed over the Apel hull. The bottom of the Ventnor was different from the Hallett boat. The bottom of the Ventnor boat was curved, and it had long runners on the side. The stabilizers were about the same on both boats, but the stabilizers on the Hallett hull are deeper and flatter than those on the Apel hull and have a sharper rise on the slant of the runners up at the front than the Apel hull. They were in a fair amount the same on the Hallett hull and the Apel patented boat.

The trial court found plaintiff's patent valid and infringed by the defendant Sid Street, Jr. The court's reasoning appearing in its Memorandum (not reported) was that the Apel patent related to the bottom of a racing hull, that the bottom of the Hallett hull was very like the bottom of the Apel hull, and so infringement resulted even though the Hallett hull obtained its lift by aerodynamic principles applies to the broad, rounded bow and convex deck surface of the Hallett hull.

### Opinion.

█ The plaintiff's description of his patent and his claims quoted above from his Letters Patent show that the fundamental principle of his patent, the core of his invention, is a hull having stabilizers or pontoons and trailing vertical fins so designed as to entrap a maximum amount of air passing under the bottom of the boat, and to concentrate it under the bottom of the boat to produce and retain compressed air lift to the hull as long as possible, producing a boat riding at high speeds at three points, i. e. on the two stabilizers and the stern, all designed to make for greater speed. That was the gist of plaintiff's testimony as he said that the purpose of the concavities of his design was to entrap air under the boat as it moves forward and to compress the air under the boat and to pass it out under the stern. The reason his patent covers the fins which extend back from the stabilizers is to keep the air from coming out of the sides, the primary objective of his design being to create a hull which would entrap and compress the air underneath the hull and pass it out at the stern, so that his boat, when traveling at racing speeds, is supported at three points, on the two stabilizers and on the stern of the boat.

It is manifest that the basic feature of plaintiff's hull as set forth in the Letters Patent and by his own testimony and his evidence is that the bottom of his hull is so designed as to give lift to his hull at racing speeds solely by the compression of air under it.

But the undisputed evidence shows that the Hallett hull used and sold by defendant is different in design and obtains its lift on an entirely different principle. It is not from the design of the bottom of the boat that the Hallett hull obtains its lift; it is the rounded front and the shape of the deck which make for the air foil and aerodynamic lift which causes it to ride at only two points, namely on the stabilizers, at racing speeds, with its back end about eight inches out of the water. The Hallett hull does not entrap air under the boat. The bottom of the Hallett hull is flat and has no concavities which are an integral part of the Apel design as shown by the description, drawings and claims in the Apel patent.

The fundamental differences in the patented hull and the accused hull are clear and obvious upon inspection of the models exhibited, and the evidence is convincing that it is the difference in design and principle on which the Hallett

hull operates which gives it a greater speed than the Apel hull. The proof of the pudding is in the eating of it, and in a racing boat it is the speed of it that counts.

It was and is contended for Apel that the case of Fauber v. United States, 37 F. Supp. 415, 93 Ct.Cl. 11, tends to support his contention that Hallett infringed by appropriating the substance of the Apel invention.

It appears that in the Fauber case the plaintiff was the holder of patents on hydroplane boats. Using hulls the same as those covered by the patents, the War Department applied airplane wings and an airplane motor as superstructure producing hydroplanes and plaintiff's action for infringement was against the United States as defendant. Holding infringement existed, the Court of Claims said, loc. cit. 443:

"The addition by the defendant to the hydroplane boat covered by the patent of the aeroplane superstructure does not affect the ultimate question of infringement, for, as was held by the court in Cimiotti Unhairing Co. v. American Unhairing Mach. Co., 2 Cir., 115 F. 498, 504: ' * * * The mere fact that there is an addition, or the mere fact that there is an omission, does not enable you to take the substance of the plaintiff's patent. The question is not whether the addition is material or whether the omission is material, but whether what has been taken is the substance of the invention.' "

We do not believe that Fauber rules this case, because on the undisputed testimony, and on the physical exhibits, Hallett did not appropriate the substance of Apel's invention, which was a hull so designed so as to entrap and compress air under it, to produce lift. Hallett's hull, as shown by the undisputed testimony, operated on air foil or aerodynamic lift. Hallett created a different hull which operates on a different principle.

It is also contended for Apel that there was infringement by Hallett because both the Apel and the Hallett hulls rode at three points at slower speeds.

But all of Apel's patent descriptions and claims have to do with the operation of a speed hull at racing speeds. Apel does not lay claim to any inventiveness in respect to the hulls of boats as they rest on the water or move at ordinary speed. The ingenuity and skills of both Apel and Hallett were directed to the perfection of hulls to win races. Apel's went faster on its three points in its day but lost out later to Hallett's new rider on two points.

 Nothing in the patent law denies Hallett the fruit of his victory and no finding of infringement could be rested on the fact that both of the hulls floated on the whole of their bottoms when they were not speeding. It is only as to the elements for, and combination of elements for, speeding that Apel claimed invention. No combination of elements for merely floating the boat or adapting it to ordinary travel is claimed by Apel as invention, and that which is not literally within the claims does not infringe. Criner v. Micro-Westco, Inc., 8 Cir., 139 F.2d 681; Ronson Patents Corp. v. Sparklets Devices, 8 Cir., 202 F.2d 87, 93; Willis v. Town, 8 Cir., 182 F.2d 892, 893; Measuregraph Co. v. Grand Rapids Show Case Co., 8 Cir., 29 F.2d 263, 277; Freeman v. Altvater, 8 Cir., 129 F.2d 494, 500; Cadwell v. Firestone Tire & Rubber Co., D.C.E.D.N.Y., 13 F.2d 483, 487.

We think the evidence established beyond question that the two hulls here involved are dissimilar in design and in operating principle. The Apel hull comes to a point in front, and specially designed concavities on its bottom combine with the stabilizers and their trailer fins to compress and entrap air under the entire length of the boat in order to give it lift. At all speeds it rides on three points, the stabilizers and the stern. The Hallett hull is so designed as to discharge all air passing under it at the earliest opportunity and not to compress or entrap air under it. At racing speeds it rides on the stabilizers which then serve no

other purpose. The two hulls operate on essentially different and opposing principles and the manufacture and sale of the Hallett hull did not constitute infringement of the Apel patent.

Reversed with directions to dismiss.