**John P. A. BLANKENSHIP, Plaintiff,**

v.

**DAISY MANUFACTURING COMPANY, Defendant.**

**Civ. A. No. 1545.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

June 13, 1961.

Charles H. Slaughter, Dallas, Tex., Dickson, Putman & Millwee, Fayetteville, Ark., for plaintiff.

Harness, Dickey & Pierce, Detroit, Mich., Harper, Harper, Young & Durden, Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

The plaintiff, John P. A. Blankenship, is a citizen of the State of Texas and a resident of the City and County of Dallas in said state.

The defendant, Daisy Manufacturing Company, is a corporation, organized and existing under the laws of the State of Nevada, and maintains and operates a manufacturing plant in Benton County in the Western District of Arkansas.

On July 16, 1960, the plaintiff filed his complaint, containing two counts, against the defendant. In Count I the plaintiff alleged that on February 23, 1960, Letters Patent No. 2,925,685 were duly and legally issued to him relating to a sound making device for toy guns, which simulates the whine of a bullet as fired from an actual firearm such as a rifle or automatic; that the defendant has infringed the said Letters Patent by making, selling and offering for sale its product embodying the patented invention protected under said Letters Patent.

In Count II the plaintiff alleged that the defendant has engaged in unfair trade practices and unfair competition against him by "presenting to the public a lower quality, priced and cheap imitation of a sound making device, incorporated and made a part of its 'Cheyenne Guns' under its Patent No. 2,729,208, in such manner as to convey to the buying public a false impression that the high quality features embodied in this plaintiff's invention embraced in his Letters Patent No. 2,925,685 could be attained at a lower price in its cheap imitation sound making device that defendant represents to the public as having a 'Genuine Bullet Whine' feature."

In the prayer of the complaint the plaintiff demands that defendant be enjoined from further infringement of said Patent No. 2,925,685, and an accounting of damages and profits. He further demands that the defendant be enjoined under Count II from continuing to engage in unfair competition and that he be awarded attorneys' fees and all other general and special relief.

On November 1, 1960, the defendant filed its answer in which it denied that it is selling or offering for sale sound making devices embodying the patented invention granted to plaintiff under Letters Patent No. 2,925,685 on February 23, 1960.

Further answering, the defendant, in subparagraph (a) of paragraph IV of its answer, alleged:

"(a) Prior to the alleged invention or discovery of the patentee, John P. A. Blankenship, of the subject matter described and claimed in said United States Letters Patent No. 2,925,685, and more than one year prior to the date of filing in the United States Patent Office of the application on which said patent purports to be based, the subject matter of said Patent No. 2,925,685 and every material and substantial part thereof had been patented and/or described in the patents set forth below, as well as those cited by the United States Patent Office during the course of prosecution of the application upon which said Patent No. 2,925,685 issued, and others, due notice of which will be given to the plaintiff as required by the patent statutes now in force:"

Then follows a list of the patents which the defendant pleads as constituting the prior art. Not all of the patents that were pleaded by the defendant were introduced in evidence, but the following patents were introduced as exhibits by the defendant:[1]

DX 12—Canadian Patent No. 518,-821, issued November 22, 1955, to Oscar Doster.

DX 13—British Patent No. 734,032, issued July 20, 1955, to Hans Mangold.

DX 14—U. S. Patent No. 2,097,749, issued November 2, 1937, to J. T. Wade.

DX 15—U. S. Patent No. 1,272,353, issued July 16, 1918, to M. P. Appell.

DX 16—U. S. Patent No. 2,788,613, issued April 16, 1957, to N. M. Gelfand, et al.

DX 17—U. S. Patent No. 2,047,784, issued July 14, 1936, to S. Krakowski.

DX 18—U. S. Patent No. 1,205,498, issued November 21, 1916, to Byron P. Willett.

DX 19—U. S. Patent No. 2,734,310, issued February 14, 1956, to J. W. Christopher.

"(b) The patentee, John P. A. Blankenship, is not the first inventor of the subject matter described and claimed in the aforesaid patent as the same was well known to and used by others in this country prior to his alleged invention or discovery thereof by the patentees of those patents referred to in paragraph (a) above, as well as the patentees of the patents listed below, and others [including Cass S. Hough, Daisy Manufacturing Company, Rogers, Arkansas], due notice of which will be given to the plaintiff as required by the patent statutes now in force:"

The prior art pleaded in subparagraph (b) is DX 16, U. S. Patent No. 2,788,613, issued April 16, 1957, to N. M. Gelfand, et al.

That the subject matter described and claimed in the patent issued to the plaintiff was obvious to a person having ordinary skill in the art to which said patent pertains at the time alleged invention was made; that both claims of the said patent are invalid and void because no invention was required to devise the alleged invention described and claimed therein in view of the state of the art existing prior to the alleged invention; the claims of the patent issued to plaintiff do not cover devices of the type which defendant is manufacturing and selling and the sale of such devices by the de-

---

[1]. Plaintiff's exhibits are referred to herein as PX and defendant's exhibits as DX.

fendant does not constitute an infringement of any of the claims of said patent.

In subparagraphs (g) and (h) of numbered paragraph IV, the defendant alleged:

"(g) By reason of amendments and arguments made by the applicant before the United States Patent Office during the prosecution of the patent application which resulted in said Patent No. 2,925,685 to meet rejections and actions of the Patent Office and in order to induce the issuance of said patent, plaintiff is estopped from asserting or contending that any devices manufactured, used or sold by defendant constitute infringement of any of the claims of said Patent No. 2,925,685.

"(h) Both claims of said Patent No. 2,925,685 are invalid and without any legal effect for the reason that each of said claims does not define a patentable invention, but on the contrary, each of said claims defines an aggregation of unrelated devices and/or elements separately old and well known in the art."

In answer to Count II of the complaint, the defendant denied each and every allegation therein, and further alleged that the plaintiff has never manufactured and sold or offered for sale devices covered by the patent in suit and, therefore, has no trade business or reputation in devices covered by the patent with which the defendant could engage in unfair trade practices and unfair competition; that its products are not imitations or copies of the structure embodied in plaintiff's patent, and the sound making device incorporated in its guns is not visible to purchasers of such guns as the same are displayed or purchased; that the purchasing public could not be confused or deceived as alleged by plaintiff and "no 'palming-off' by defendant of an imitation of plaintiff's sound making device could possibly occur."

In an amendment to the complaint filed January 21, 1961, the plaintiff alleged that the defendant had also engaged in unfair trade practices and unfair competition in selling and offering for sale "its other air rifles and noise guns as enumerated in defendant's answer to Interrogatory No. 1 of plaintiff's second set of interrogatories, and such other air rifles, noise guns and other guns that defendant may be producing which are unknown to the plaintiff."

On February 4, 1961, the defendant filed its answer to the amendment to the complaint in which it denied again that it was guilty of any unfair trade practices.

Upon the issues as made by the complaint of the plaintiff and amendment thereto, the answer and amendment thereto of the defendant, the cause proceeded to trial to the court on February 27–28, 1961.

After due consideration of the issues, the contentions of the parties as set forth in their briefs, and all the testimony and exhibits thereto, this opinion is filed embodying the findings of fact and conclusions of law in accordance with Rule 52(a), F.R.Civ.P., 28 U.S.C.A.

During the trial and at the conclusion of the testimony in chief offered by the plaintiff, the defendant separately moved to dismiss each of the counts contained in plaintiff's complaint. The court sustained the defendant's motion to dismiss Count II and the amendment thereto, being the count containing the claim for damages for the alleged unfair trade practices and unfair competition by defendant against plaintiff, but denied the motion to dismiss Count I, being the claim of the plaintiff for damages for the alleged infringement by defendant of the patent in suit.

Jurisdiction of the court is founded upon 28 U.S.C. § 1338(a) and (b). Since the court dismissed the claim of plaintiff based upon the allegations that the defendant had engaged in unfair trade practices and unfair competition against the plaintiff, there remain for decision at this time only two questions: (1) Is

the patent issued to plaintiff valid, and (2) if valid, has the defendant infringed the same?

It was stipulated at the beginning of the trial that the claim of plaintiff for damages was reserved until such time as the court determines the two questions above set forth.

In Sinclair & Carroll Co. v. Interchemical Corp., 1945, 325 U.S. 327, beginning at page 330, 65 S.Ct. 1143, at page 1145, 89 L.Ed. 1644, the court said:

"There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. Irvin v. Buick Motor Co., [8 Cir.] 88 F.2d 947, 951; Aero Spark Plug Co. v. B. G. Corp., [2 Cir.] 130 F.2d 290; Franklin v. Masonite Corp., [2 Cir.] 132 F.2d 800. It has come to be recognized, however, that of the two questions, validity has the greater public importance, Cover v. Schwartz, [2 Cir.] 133 F.2d 541, and the District Court in this case followed what will usually be the better practice by inquiring fully into the validity of this patent.

"A long line of cases has held it to be an essential requirement for the validity of a patent that the subject-matter display 'invention,' 'more ingenuity * * * than the work of a mechanic skilled in the art.' Hicks v. Kelsey, 18 Wall. 670 [21 L.Ed. 852]; Slawson v. Grand Street [P. P. & F.] R. Co., 107 U.S. 649 [2 S.Ct. 663, 27 L.Ed. 576]; Phillips v. Detroit, 111 U.S. 604 [4 S.Ct. 580, 28 L.Ed. 532]; Morris v. McMillin, 112 U.S. 244 [5 S.Ct. 218, 28 L.Ed. 702]; Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U.S. 704 [51 S.Ct. 232, 75 L.Ed. 634]; Honolulu Oil Corp. v. Halliburton, 306 U.S. 550 [59 S.Ct. 662, 83 L.Ed. 980]; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 90 [62 S.Ct. 37, 40, 86 L.Ed. 58].

This test is often difficult to apply; but its purpose is clear. Under this test, some substantial innovation is necessary, an innovation for which society is truly indebted to the efforts of the patentee. Whether or not those efforts are of a special kind does not concern us. The primary purpose of our patent system is not reward of the individual but the advancement of the arts and sciences. Its inducement is directed to disclosure of advances in knowledge which will be beneficial to society; it is not a certificate of merit, but an incentive to disclosure. See Hartford-Empire Co. v. United States, 323 U.S. 386, 432–433 [65 S.Ct. 373, 89 L.Ed. 322]. Consequently it is not concerned with the quality of the inventor's mind, but with the quality of his product."

### The Plaintiff's Patent

The plaintiff did not introduce into the evidence any complete model of a gun containing the device, but did introduce as PX 4, 5 and 11, models of the device to be placed in, and in fact PX 4 and 11 show the device set in crudely constructed handles or grips of a pistol or other short gun. PX 5 is a finished handle or grip of a short gun, with the device set therein.

At the time the plaintiff testified, he had before him drawings consisting of Figures 1 to 6, inclusive, PX 1, attached to the patent and also contained in File Wrapper, DX 5. Figure 1 shows the mechanism that is placed within the handle or grip of the gun for the purpose of simulating the "Bullet Whine." The drawings disclose that the gun is cocked by downward and backward pressure on cocking device No. 23, which causes plate No. 19 to move forward when detent 33 or a "little clip" is positioned over pin 31. In that position the plate 19 is locked, to be released by pressure on the forward part or the curved part of the arm 34. When the plate is so released a spring 25, situated

at the back of plate 19, swings the plate in a rearward position and the arcuate, notched end of plate 19 rotates over gear 36, which in turn revolves gear 37. This gear is nothing more than a serrated wheel, the periphery of which contacts the corrugated portion of needle, 38, which carries the vibrations to a sounding box immediately below the needle in the butt of the gun. The sound produced by the large gear 37 passing over the corrugated needle simulates the sound of a bullet that has been fired from a gun and ricocheted by some object. After "firing," the operator may repeat by again pressing down and rearward on the thumb piece 23.

The only purpose of plate 19 is to convey power to the serrated wheel or gear 37.

Sounding box 40 amplifies the sound produced by the serrated gear or wheel 37 passing over the corrugated portion of the needle. The parts above described may also be seen by an examination of PX 4.

PX 5 is, in the words of the plaintiff, an exact model of his invention as is described and shown in the patent. A reference to the patent, PX 1, discloses that, on the first page in column 2, lines 9 through 11, it is stated: "the arrangement being such that the spring normally biases the plate in a direction toward the front or trigger guard of the frame," whereas the correct reading should be: "the arrangement being such that the spring normally biases the plate in a direction toward the rear of the frame." In other words, the language of the claim or of the patent states that the purpose of this spring is to bias or urge the plate forwardly, whereas as a matter of fact it should have said rearwardly. The spring actually propels the plate rearwardly and not forwardly. In the same column 2, lines 23 to 25, the following language appears:

"A spring 32c wound about axle 33a serves normally to bias detent 33 to pin releasing position."

Whereas, the spring 32c wound about axle 33a serves normally to bias detent 33 to a holding position. Other discrepancies appear which need not be specifically set forth.

In plaintiff's trial brief, page 16, he makes the following statement:

"The heart of plaintiff's patent includes (1) a vibrating sounding needle; (2) a gear with teeth on its periphery movable over the corrugated portion of the sounding needle; (3) means for actuating the toothed gear over the needle to produce the sound; (4) cocking, locking and releasing means."

The application of plaintiff for the patent was filed June 4, 1958, and embraced five claims, which will be hereinafter referred to. Upon consideration of the application and the five claims, the Examiner stated:

"The application has been examined.

"References cited:
"Willett          1,205,498     Nov. 21, 1916     46/191
"Related art:
"Bregman      1,436,855     Nov. 28, 1922     46/192
"Bregman      1,619,184     Mar. 1, 1927     46/192

"Claims 1–5 are rejected as inaccurate. The claims are inaccurate in that they recite the gear 37 as being rotated by the segment 19 and the needle 38 being adjacent said gear, when in fact the segment 19 rotates gear 36 which in turn rotates the gear mentioned in the claims.

"Claims 1–5 are further rejected as unpatentable over Willett. The claims do not appear to define invention over Willett who discloses a sound producing device in conjunction with a toy gun comprising a frame, a trigger, a plate 26 having a 'toothed arcuate segment', a gear 27 rotated by said segment, a sound box 8, and means to simulate the firing of the gun. This is substantially the structure of the claims, especially as broadly as drawn." (DX 5)

Following the disallowance of the application, the plaintiff, on May 13, 1959, amended the application and substituted for the five original claims the following claims:

———◆———

"1. A device for producing a sound in simulation of the whine of a bullet, in conjunction with a toy gun, including a gun frame and a trigger, a vibrating sounding needle having a corrugated portion, mounted within said frame, a shaft within said frame disposed above said needle, a substantially large gear mounted on said shaft, said substantially large gear having teeth on its periphery movable over said corrugated portion of said needle, vibrating said needle producing a sound, a substantially small gear secured to said shaft for rotating said shaft and said substantially large gear, a pivoted actuating plate mounted within said frame, having a toothed acuate shaped end meshing with said substantially small gear, rotating said gear as said actuating plate is operated, locking mechanism for normally holding said actuating plate inactive in a cocked position, and trigger control means for releasing said plate rotating said gears, producing a whining noise."

"2. A device for producing a sound in simulation of the whine of a bullet, in conjunction with a toy gun, including a gun frame and a trigger, a vibrating sounding needle mounted within the frame having a corrugated end portion, a substantially large gear mounted within the frame having peripheral teeth engaging said corrugated portion of the sounding needle producing a sound, a small gear operating said substantially large gear, a pivoted hinge plate within the frame having teeth engaging said small gear and rotating said small gear as the teeth of the hinge plate move thereover, means for moving said hinge plate rearwardly within the frame, a spring member connected with said hinge plate tensioned by the movement of said hinge plate in one direction, means for locking said hinge plate in an inactive position against the action of said spring, and means for releasing said locking mechanism and plate whereby said spring moves said plate operating said gears and sounding needle producing a sound." (PX 1)

———◆———

Upon the above substituted claims the patent was issued to plaintiff on February 23, 1960.

### Is The Patent In Suit Valid?

In considering the question of whether the patent in suit is valid, the provisions of the applicable statutes must be kept in mind.

Title 35 U.S.C. § 101, provides:

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

Sec. 102 provides:

"A person shall be entitled to a patent unless—

"(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

* * * * * *

"(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or &ast; &ast; &ast;."

Sec. 282 provides:

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it.

"The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:

"(1) Noninfringement, absence of liability for infringement or unenforceability,

"(2) Invalidity of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability,

"(3) Invalidity of the patent or any claim in suit for failure to comply with any requirement of sections 112 or 251 of this title,

"(4) Any other fact or act made a defense by this title."

Sec. 112 provides:

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

Sec. 251 referred to in Sec. 282 deals with the re-issue of defective patents.

The claims and specifications must disclose "the flash of creative genius." Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 41, 86 L.Ed. 58. "A long line of cases has held it to be an essential requirement for the validity of a patent that the subject matter display 'invention', 'more ingenuity &ast; &ast; &ast; than the work of a mechanic skilled in the art.'" Sinclair & Carroll Co., Inc. v. Interchemical Corp., [325 U.S. 327, 65 S.Ct. 1145] supra.

The question confronting the court in the instant case was well stated by Judge Collet in Continental Farm Equipment Co., Inc. v. Love Tractor, Inc., 8 Cir., 1952, 199 F.2d 202, in which he said:

"The principal question for decision is the validity of plaintiff's patent. It is assailed upon the ground that plaintiff's implement is really only an aggregation of three principles demonstrated by prior patents and past uses, combined by plaintiff by the application of mere mechanical skill and without need for or resulting from inventive genius. There is no real difference between the parties concerning the applicable law by which invention is distinguished from mechanical skill, although there is a difference of opinion as to the application of the rule laid down in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Great A. & P. Tea Co. v. Supermarket [Equipment] Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, and related cases, to the facts of this case. The controversy necessarily requires a scrutiny of plaintiff's patent in the light of the prior art and former uses of the constituent parts of plaintiff's product."

The plaintiff, on page 9 of his brief, states that he was the first to put any kind of sound making device in a toy gun to produce a bullet whine or ricochet sound. The defendant denies the truth of such assertion and has cited in proof of the denial the prior art.

U. S. Patent No. 2,734,310, issued February 14, 1956, to J. W. Christopher, DX 19, clearly and unequivocally teaches the incorporation in a toy gun of a mechanism for producing a bullet ricochet sound. The patent shows two different means for accomplishing this result—one way being by means of a record, a needle and a sound box, and the other by means of the actuation of a tuning fork member.

Canadian Patent No. 518,821, issued November 22, 1955, to Oscar Doster, DX 12, clearly states that a sound box, vibrating needle and rotating ratchet wheel or gear may be incorporated in a toy gun to produce a siren or "whine" noise.

U. S. Patent No. 1,205,498, issued November 21, 1916, to Byron P. Willett, DX 18, states that ricochet sounds may be obtained according to the mechanism employed for vibrating and striking upon the diaphragm box.

U. S. Patent No. 1,272,353, issued July 16, 1918, to M. P. Appell, DX 15, and U. S. Patent No. 2,097,749 issued November 2, 1937, to J. T. Wade, DX 14, both show toy guns which incorporate a reed or needle vibrated against the diaphragm of a sound box by a ratchet wheel or gear which is rotated when the trigger of the gun is pulled to produce noise. The last two named patents, DX 14 and 15, employ sound making mechanisms of the same type as claimed in plaintiff's patent. However, the plaintiff attempted to distinguish over these prior patents by claiming that the guns illustrated in DX 14 and 15 did not produce a ricochet noise but produced another type of sound. It was demonstrated to the court, and admitted at the trial by the parties, that such a difference in sound is simply a matter of pitch of the sound, and that the pitch of the sound can be varied by varying the pressure with which the needle engages the rotating gear, the number of teeth on the gear and the speed of the rotating gear.

In addition to the above patents, U. S. Patent No. 2,047,784, issued July 14, 1936, to S. Krakowski, DX 17; U. S. Patent No. 2,788,613, issued April 16, 1957, to N. M. Gelfand, et al., DX 16; and British Patent No. 734,032, issued July 20, 1959, to Hans Mangold, DX 13, disclosed the same type of sound making mechanisms in toys which produced various sounds ranging from that of a jet engine "screamer whine" to that of a chicken cackling, depending upon the pitch of the sound as it is affected by the number of teeth on the gear and the speed of rotation of the gear.

A comparison of the prior art with the claims of the plaintiff's patent is convincing that the plaintiff's patent is not a basic or pioneer patent, and, at the very most, is a narrow improvement patent claiming a combination of well known and recognized elements.

The court in Selmix Dispensers, Inc. v. Multiplex Faucet Co., Inc., 8 Cir., 1960, 277 F.2d 884, discussed the problems with which the court has been confronted in the instant case. Beginning at page 886, the court said:

"Article I, Section 8, of the Constitution, authorizes Congress to reward inventive genius by providing for the issuance of patents, but does not authorize the issuance of patents as a reward for mechanical skill alone. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58; Steffan v. Weber Heating & Sheet Metal Co., 8 Cir., 237 F.2d 601, 604.

"While a presumption of validity of a patent arises from its issuance by virtue of 35 U.S.C.A. Sec. 282, this presumption is rebuttable. The many cases cited and briefly discussed by Justice Douglas at pages 156–158 of 340 U.S., at page 132 of 71 S.Ct. of his concurring opinion in Great A. & P. Tea Co. v. Supermarket Equip. Corp., supra, clearly

demonstrate that the presumption of validity has frequently been overcome in patent validity cases. Justice Douglas concludes his opinion as follows:

" 'The fact that a patent as flimsy and as spurious as this one has to be brought all the way to this Court to be declared invalid dramatically illustrates how far our patent system frequently departs from the constitutional standards which are supposed to govern.'

"The Supreme Court in the A. & P. case states that no precise test can be laid down for determining the validity of a patent. The court does state certain principles to be applied in determining patentability. Among them:

" 'The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devises patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics. * * *

" 'Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. * * *' 340 U.S. at pages 152–153, 71 S.Ct. at page 130.

"In Cuno Corp. v. Automatic Devices Corp. the court, in support of its decision holding a mechanical patent involving the aggregation of old elements invalid, concedes that the functions performed by the patented article are new and useful. After citing and discussing numerous authorities, the court states:

" 'Under the statute (35 U.S.C. Sec. 31, 35 U.S.C.A. Sec. 31, R.S. § 4886), the device must not only be "new and useful", it must also be an "invention" or "discovery". Thompson v. Boisselier, 114 U.S. 1, 11 [5 S.Ct. 1042, 1047, 29 L.Ed. 76]. Since Hotchkiss v. Greenwood, 11 How. 248, 267 [13 L.Ed. 683], decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. * * *' 314 U.S. at page 90, 62 S.Ct. at page 40.

"This court has recently had occasion to review a number of claims to mechanical patents based upon an aggregation of old elements. Judge Sanborn in Caldwell v. Kirk [8 Cir., 269 F.2d 506], supra, and in his concurring opinion in Briggs & Stratton Corp. v. Clinton Machine Co., 8 Cir., 247 F.2d 397, 400, cites and analyzes the recent patent cases decided by the Supreme Court and this court, and points out that more exacting standards for determining patent validity have been applied by courts in recent decisions, and that many of the rules applied in the older cases are no longer followed. The patents involved in the cases just cited, covering an aggregation of old elements, were found to be invalid. Other recent cases in which we have held mechanical aggregation patents invalid for want of invention are John Blue Co. v. Dempster Mill Manufacturing Co., 8 Cir., 275 F.2d 668 (decided March 15, 1960); Johnson Fare Box Co. v. National Rejectors, Inc., 8 Cir., 269

F.2d 348; Steffan v. Weber Heating & Sheet Metal Co., supra."

The device covered by the patent in suit has never been manufactured or placed on the market and, of course, no one knows whether the device would meet with commercial success, but the court is convinced that, even if the entire combination of claims 1 and 2 of the patent is not present in any single patent heretofore discussed, the claims are invalid because "the differences * * * are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill" in the pertinent art. Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra.

Title 35 U.S.C. § 103, provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

No new result is attained by the claimed invention. It has no new means and no new way of operating beyond what the prior art teaches. Therefore, there was no invention as required by the statute and the many decisions, and the patent as issued is invalid.

### Infringement

If the court is correct in holding that the patent in suit is invalid for the want of invention, there can be no infringement of its claims. Caldwell v. Kirk Mfg. Co., 8 Cir., 1959, 269 F.2d 506, 507. However, in an effort to expedite the final disposition of the case, the court believes that the parties, and the Court of Appeals in the event of an appeal, are entitled to have the opinion of this court on the question of whether the accused device infringes the patent of plaintiff, notwithstanding the court is convinced that the patent of plaintiff is invalid for want of invention.

Before discussing the claims of infringement, the court believes that it may be helpful to describe briefly the guns that are being manufactured by the defendant and which the plaintiff claims infringe his patent.

In 1953 the defendant began the manufacture of its Model 960 toy rifle, DX 9, which makes a loud "bang" and produces smoke when it is fired. This toy rifle is illustrated and covered by defendant's U. S. Patent No. 2,729,208, issued to Lee B. Gaeke on January 3, 1956, and assigned to defendant, DX 10. In 1954 the defendant's president began planning to have other features developed to produce a line of toy rifles that would appear to be real guns and would make a loud, explosive noise, produce smoke, a smell and fire, and at the same time simulate the whine of a bullet.

In 1956 he purchased a toy automobile for his son, DX 8, and upon examination ascertained that the toy contained a simple mechanism for producing a siren sound which was similar to a ricochet bullet sound. He delivered the toy car to one of the engineers of defendant and suggested that the engineer consider using the sound mechanism to produce a ricochet sound in a toy rifle. In September 1958 such a toy rifle was produced, DX 11, that could be operated without affecting the basic "bang" noise produced by the standard Model 960, noise and smoke rifle, that was then already on the market. The rifle that evolved, Model 660, DX 6, which the plaintiff claims infringes his patent, is the defendant's old Model 960, the smoke and noise rifle, DX 9, with sound box, diaphragm, vibrating reed and rachet wheel or gear supported beneath the rifle barrel and enclosed by a cover that has the appearance of a rifle "forearm." In order to actuate or rotate the left wheel or gear, a pawl or needle finger is movably supported in the rifle plunger by the convolutions of the coil spring which pro-

pels the plunger, DX 1, forwardly in the rifle barrel, DX 1 and 2 and PX 8. When the plunger moves forwardly, the pawl strikes and rides over the ratchet wheel to cause it to rotate and vibrate the reed against the sound box diaphragm, DX 3, so as to produce the ricochet sound simultaneously with or immediately after the bang occurs.

This toy rifle was first manufactured and sold by defendant in the spring of 1959 as its Model 660 "Cheyenne" rifle.

In early 1960 the defendant began the manufacture of its Model 97 BB rifle, DX 7, which is the same as its Model 660 "Cheyenne" rifle, except that it shoots BB's instead of just making a noise.

On March 16, 1960, the plaintiff notified the defendant that he claimed that the defendant was infringing his patent.

Prior to February 23, 1960, the date of the issue of plaintiff's patent, no employee, agent or representative of the defendant ever met or corresponded with the plaintiff.

On page 6 of plaintiff's brief he states:

"Plaintiff frankly admits that the accused sound making device of defendant does not fall literally within the two claims of plaintiff's patent and that he is invoking the aid of the doctrine of equivalents to protect his patent in this case."

It is defendant's position that a comparison of defendant's device with the structure claimed in plaintiff's patent makes it clear that there is no actual infringement.

The two claims of plaintiff have heretofore been set forth. They are somewhat repetitious, and in an attempt to read these claims on the defendant's accused rifles the court will consider claim No. 1 first.

The trigger called for in the opening portion of claim 1 is trigger 16, shown on DX 2 or PX 8. The vibrating sounding needle having a corrugated portion, as called for in the claim, would have to be the bent wire reed 34 on DX 2, and

according to the claim of the plaintiff, the corrugated portion would be the cam or bent end at the rear end of defendant's wire reed. Webster's Dictionary states that the word "corrugated" means "formed into folds or furrows" and the word "corrugate" means "to form or shape into wrinkles or folds or alternate ridges and grooves."

The end of defendant's sound needle is not corrugated but is provided with a cam so that the end of the needle will not be bent or damaged by the rachet wheel or gear.

The defendant's expert explained in the following words why the needle in defendant's device was shaped as it is:

"The purpose of the cammed shaped end on needle 34 is simply to protect the needle. In developing this sound making mechanism, it was essential that we use a very small wire. I believe the wire diameter is something like .005, which is about two and one half times the thickness of human hair. This wire is very fragile and it has to have a contact against the plastic diaphragm which is inserted in this drum mechanism, and in order to protect this wire so that the wheel could move backwards in cocking and move forward when fired, we simply added a little 'V' cam on this to insure the wheel could be rotated in either direction."

In the device shown in plaintiff's patent, the corrugations are necessary because if there were no corrugations the large gear would simply rotate over the smooth top surface of the needle and would not cause any substantial needle vibrations to occur, and no substantial noise would be produced. Thus it is seen that the defendant's structure does not include a needle having a corrugated portion as specifically recited in both of the claims of the patent in suit.

The shaft and the large gear mounted on the shaft and engaging the needle, as called for in claim 1 of plaintiff, would have to be the shaft 35 and gear 36 of

defendant's device as shown on DX 2, although it should be borne in mind that in defendant's device, the gear 36 does not move over a corrugated portion of a needle as called for in the patent claim.

The substantially small gear secured to the shaft for rotating the shaft and large gear, as set forth in claim 1, is not found in any of the defendant's guns. When the original claims of plaintiff, 1 through 5, were rejected, the plaintiff specifically revised the claims to call for both the large and small gear and, of course, is now estopped from asserting that his claims cover a structure like the defendant's where two sets of gears are not employed. It will also be noted that defendant's single rachet wheel or gear 36, DX 2, does not perform the same function as the two gears, 36 and 37, shown in plaintiff's patent drawing, PX 1, and specifically included in plaintiff's claims. The plaintiff stated that by using a large and small gear, he obtained a mechanical advantage in his device which enabled him to use a lighter spring to rotate the gears than would be possible if only a single gear were used; that if a heavier spring were used, it would be harder to cock the plaintiff's gun, which, of course, would not be desirable if the gun were to be used by small children. In the defendant's structure, where only a single gear is employed, this mechanical advantage is not obtained, and thus defendant's single gear does not function in the same manner as plaintiff's two gears. Therefore the plaintiff's contention that defendant has not omitted an element called for in the claims but rather has combined two elements into one is not valid or logical.

The claim also calls for a "a pivoted actuating plate mounted within said frame, having a toothed arcuate shaped end meshing with the substantially small gear." The defendant's guns do not employ or incorporate any pivoted actuating plate, having a toothed arcuate shaped end meshing with a small gear. The defendant's pawl and plunger, DX 1, are not the equivalent of the "pivoted actuating plate," and the doctrine of equivalents does not help the plaintiff.

The locking mechanism of plaintiff's device for holding the actuating plate inactive could only be construed as the sear 17, shown on defendant's drawing, DX 2, although it will be understood that none of defendant's structures include an actuating plate as called for in plaintiff's claims.

The trigger control means for releasing the plate, called for in claim 1, can only find its counterpart in the trigger 16 shown on defendant's drawing, DX 2. The claim calls for both "a trigger" and "trigger control means." Defendant's guns do not have both of these claimed elements, but only have a trigger 16, DX 2.

The plaintiff's patent discloses a gun which has a trigger 16 and a completely separate trigger control means 34, so that the trigger 16 can be actuated without actuating the trigger control means 34, and thus without actuating the ricochet sound making mechanism, and vice versa. But in defendant's structure only one trigger 16, as shown in DX 2, is provided so that every time the trigger is pulled and the gun is fired, the ricochet noise mechanism will be actuated.

Claim 2 of plaintiff calls for "a vibrating sounding needle mounted within the frame having a corrugated end portion, a substantially large gear mounted within the frame having peripheral teeth engaging said corrugated portion of the sounding needle producing a sound." Defendant's structure has a vibrating sounding needle and a gear engaging the needle, but the defendant's structure does not incorporate a needle having corrugated portion which engages the gear as called for in claim 2 of plaintiff, for the reasons above set forth in the discussion of claim 1. The defendant's guns do not incorporate a small gear operating a large gear as called for in claim 2, and the defendant's single gear 36, DX 2, does not perform the same function as the two gears of the guns disclosed in plaintiff's patent.

While defendant's guns do not incorporate a pivoted hinge plate having teeth engaging the small gear to rotate the same, as called for in claim 2, the plaintiff contends that the defendant's coil spring 13, DX 2 and DX 1, which moves the plunger, not rearwardly, but forwardly is the part which corresponds with the portions of claim 2 for a "means for moving said hinge plate rearwardly within the frame." However, defendant's guns do not include any elements that correspond with the claims as set forth in claim 2, and therefore do not infringe the claim.

Claim 2 provides for "a spring member connected with said hinge plate tensioned by the movement of said hinge plate in one direction." The means for locking the hinge plate in an inactive position, as called for in claim 2, would be the sear 17, DX 2, of defendant's guns, although, as above stated, the defendant's guns do not incorporate a hinge plate of any nature. The means for releasing the locking mechanism and plate called for in claim 2 can only be construed to relate to the trigger 16, shown in defendant's drawing, DX 2. As pointed out in the consideration of claim 1, the defendant's guns do not incorporate a separate trigger and means for releasing the ricochet sounding mechanism as specifically called for in claim 2 of plaintiff's patent claims. Defendant's guns have only a single trigger and, therefore, claim 2 is not infringed.

In summary, it may be said that the defendant's guns simply do not embody or include several elements specifically recited in plaintiff's patent claims. At the risk of repetition, it will be noted that the defendant's rifles do not include a pivoted acuating plate having a toothed arcuate shaped end as called for in plaintiff's claims. They do not incorporate both a trigger and a trigger control

means or releasing means, as specifically called for in the claims, and which are incorporated in the plaintiff's structure to enable his ricochet noise mechanism to be operated independently of the gun trigger. The defendant's guns do not incorporate both a large and a small gear, but employ a single gear which cannot provide the mechanical advantage which plaintiff claims is desirable and seemingly necessary in plaintiff's structure to enable the gun to be cocked by children. The defendant's guns do not incorporate a vibrating needle having a corrugated end portion as called for in the claims. Thus it will be seen by a reading of the claims of plaintiff and an examination of the defendant's guns that the defendant's guns do not contain several elements called for in the claims of the patent in suit.

While plaintiff admits that the claims of the patent in suit do not read on defendant's rifles, yet he is invoking the aid of "the doctrine of equivalents" in an effort to stretch the claims to make them cover defendant's toy rifles.[2]

In Parmelee Phamaceutical Co. v. Zink, 8 Cir., 1961, 285 F.2d 465, at page 469, the court said:

"There are certain well established general rules which perhaps should be mentioned for background: (a) In determining whether an accused product infringes a patent 'resort must be had in the first instance to the words of the claim'. Graver Tank & Mfg. Co. v. Linde Air [Products] Co., 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097; General Bronze Corp. v. Cupples Products Corp., 8 Cir., 189 F.2d 154, 158; Willis v. Town, 8 Cir., 182 F.2d 892, 893. (b) If the 'accused matter falls clearly within the claim, infringement is made out and that is the end of it.' Graver Tank &

2. The plaintiff in his brief has cited and quoted from a great number of decisions which he contends support his contention that "defendant's sound making device is an infringement of both claims of plaintiff's patent in suit." The court has examined all of the cases cited, but does not believe that they require any conclusions contrary to the conclusions reached by the court herein in the light of the facts found by the court.

Mfg. Co. v. Linde Air [Products] Co., supra, 339 U.S. at page 607, 70 S.Ct. at page 855. But, as this court has said, 'that which is not literally within the claims does not infringe'. Street v. Apel, 8 Cir., 239 F.2d 581, 589."

On page 471 the court said:

"But the mere presence of equivalency is not in itself enough to warrant invocation of the doctrine nor does it necessarily equate with infringement. 'The Doctrine of Equivalents Revalued', 1951, 19 George Washington Law Review, 491, 494, 503. The requirements of the patent statutes must still, and initially, be met; thus, for example, the doctrine cannot be used to expand the confines of a claim. James P. Marsh Corp. v. United States Gauge Co., 7 Cir., 129 F.2d 161, 165–166. The law review note just cited suggests, pp. 492 and 504, that the doctrine's proper application is where, because of formalized practice under present statutes, the claiming 'burden upon the patentee is so inequitable as to merit some form of extraordinary relief.' "

Again on page 472 the court said:

"If the doctrine is applicable then the range of equivalents depends upon and varies with the degree of invention. Continental Paper Bag Company v. Eastern Paper Bag Company, 210 U.S. 405, 415, 28 S.Ct. 748, 52 L.Ed. 1122; Miller v. Eagle Manufacturing Co., 151 U.S. 186, 207, 14 S.Ct. 310, 38 L.Ed. 121. Thus, where the patent is a pioneer the patentee is allowed a wide range. Shakespeare Co. v. Perrine Mfg. Co., 8 Cir., 91 F.2d 199, 202. But where the patent is narrow, or the art is crowded, it is given only a correspondingly narrow range. Electrol, Inc., of Missouri v. Merrell & Co., 8 Cir., 39 F.2d 873, 878; Ronson Patents Corp. v. Sparklets Devices, 8 Cir., 202 F.2d 87, 93; R. H. Buhrke Co. v. Brauer Bros. Mfg. Co.,

8 Cir., 33 F.2d 838, 839. We have said on at least one occasion that the range of equivalents available to a patentee may 'be so narrow as to be virtually nonexistent'. Steffan v. Len A. Maune Company, 8 Cir., 234 F.2d 750, 753."

The court has already referred to the fact that the original claims of the patent were disallowed. Those claims have not been set forth herein but appear in the File Wrapper, DX 5. An examination of the original claims shows that they call only for "a gear" rotatable by the toothed segment of the hinge plate and racheting over the needle to produce a whining noise. When the claims were rejected as being inaccurate and unpatentable over the prior art, the plaintiff canceled them and substituted the two claims now in the patent. Thus it will be seen that the plaintiff gave up and deliberately canceled all claims calling for a single gear driven by the hinge plate and vibrating needle, and in order to obtain his patent inserted the two claims in suit, which specifically call for two separate gears, a small gear actuated by the hinge plate and a large gear vibrating the needle. It now appears that the plaintiff, under the guise of the doctrine of equivalents, is attempting to recapture what he abandoned and gave up in the Patent Office by asserting that the defendant's single gear is the equivalent of the large and small gears specifically recited in the plaintiff's claims.

None of the plaintiff's original claims contain any reference to both a trigger and trigger control means. Evidently these elements were put in the claims in suit to induce the issue of the patent. Since defendant's guns do not employ both of these elements, the plaintiff cannot support his contention that the device of the defendant infringes the patent.

In Parmelee Pharmaceutical Company v. Zink, supra, the court at page 472 of 285 F.2d said:

"And of course, the doctrine of equivalents cannot be invoked to re-

gain what has been disclaimed in the Patent Office proceedings. Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 137, 62 S.Ct. 513, 86 L.Ed. 736."

Therefore, even if it should be held that the patent in suit is valid, yet the accused devices of defendant do not infringe the patent, and the complaint and the amendment thereto should be dismissed.

Judgment in accordance with the above is being entered today.