**SELMIX DISPENSERS, INC., Appellant,**

v.

**MULTIPLEX FAUCET CO. (INC.),**
Appellee.

No. 16276.

United States Court of Appeals
Eighth Circuit.

May 10, 1960.

Ralph L. Chappell, New York City, for appellant.

Edmund C. Rogers, St. Louis, Mo., for appellee.

Before GARDNER, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by plaintiff Selmix Dispensers, Inc., from a judgment holding Claim 10 [1] of Brown Patent No. 2,-673,005 for a Fountain Dispenser, which patent had been assigned to plaintiff, invalid for lack of patentable invention. Defendant's right to use most of the component parts of its continuous flow dispenser is not challenged by this suit. Defendant has been engaged in the business of making and selling fountain dispensers for 50 years. It manufactures

1. Plaintiff had in the trial court based its rights on Claims 2, 3, 8, 9 and 10 of the patent, all of which the trial court held invalid. Plaintiff by its brief limits its appeal to Claim 10.

slug type dispensers which discharge only syrup and continuous flow dispensers which mix syrup and water and deliver a mixed drink, such as Coca-Cola. Continuous flow dispensers have been in use for many years. The only part of the dispensing device involved in this suit is the unit that delivers the syrup.

Pepsi Cola and Coca-Cola are large purchasers of fountain dispensers. Pepsi Cola in 1947 and Coca-Cola in 1948 advised both plaintiff and defendant that their continuous flow dispensers were proving unsatisfactory in that they failed to produce a uniform drink, because the ratio of syrup to water fluctuated. The syrup was fed by gravity from a container. The dispensers had the common fault of not maintaining the proper ratio of syrup to charged water because when the syrup container was full, the syrup was under a greater head or pressure and came out faster than it did when the container was nearly empty. Thus, drinks drawn when the container was full had too much syrup and those drawn when it was nearly empty did not have enough. Pepsi Cola and Coca-Cola suggested to plaintiff and defendant the use of a float control in the syrup dispensing unit to create a more uniform flow of syrup. Both parties commenced work on the suggested improvement. There is dispute as to which party first perfected the incorporation of the float control in its dispensing device. Each party filed a patent application, defendant filing first. The patent applications were heard before different divisions in the patent office. The patent in suit was granted upon plaintiff's application. Defendant's patent application was denied. Plaintiff brought this suit against the defendant for infringement of its patent rights.

The principal object of plaintiff's invention as expressed in its patent is:

"To provide an improved fountain dispenser for dispensing syrup and charged water * * * which effectively maintains the proper ratio of syrup and charged water in the dispensed mixed drink * * * which is simple in construction and inexpensively manufactured, and which may readily be disassembled for cleaning purposes."

Claim 10, upon which the plaintiff relies, reads:

"In a fountain dispenser for intermittently dispensing syrup, a syrup container having a float chamber in the bottom thereof, said float chamber being of smaller diameter than said container and being connected at its top to said container by an internal shoulder, an outlet port in the bottom of the float chamber for intermittently withdrawing syrup therefrom, a removable disc having peripheral seal means engaging said shoulder to form a partition separating the float chamber from the syrup container and provided with a valve port therethrough, a float vertically movable in the float chamber and having a valve cooperating with the valve port to regulate flow of syrup through said port, guide means operatively associated with said float for guiding the vertical movement of said float to maintain said valve in substantial alignment with said valve port, and a vent tube mounted on said removable disc and extending upwardly through said container, said vent tube communicating at its lower end with the interior of said float chamber and terminating at its upper end near the top of said syrup container."

Defendant in its answer denied the validity of plaintiff's patent and asserted other defenses which become material only if the validity defense fails.

The court, after hearing the evidence, filed detailed findings of fact and conclusions of law and dismissed plaintiff's complaint upon the ground that plaintiff's claims under its patent are invalid for lack of patentable invention. Timely appeal followed.

The trial court had jurisdiction by reason of 28 U.S.C.A. § 1338(a) and 35 U.S.C.A. § 281. This court has jurisdic-

tion to consider the appeal. 28 U.S.C.A. § 1291.

■ If the district court is right in its determination that the patent plaintiff relies upon is invalid for want of invention, such determination is decisive of this case and no consideration need be given to the infringement issue or the other issues raised. In speaking of a similar situation, in Caldwell v. Kirk Manufacturing Co., 8 Cir., 269 F.2d 506, 507, this court said:

"Needless to say, if the Kirk patent is invalid for want of invention, as the defendants argue, there can be no infringement of its claims. Briggs & Stratton Corporation v. Clinton Machine Co., Inc., 8 Cir., 247 F.2d 397, 400-401."

Plaintiff asserts that·it is entitled to a reversal on the patent invalidity issue, stating:

"The District Court erred in failing to find that there was a long-felt want for the invention of claim 10 of the patent in suit and in failing to conclude therefrom that the making of the invention was not obvious and in finding that the claim is invalid for lack of patentable invention as an obvious combination of old elements performing the same function they perform in the prior art."

■ Plaintiff argues that there are no contested fact issues in this case and hence the clearly erroneous rule as to fact findings does not apply. We believe that disputed fact questions are presented. We have no doubt, however, that the trial court's decision should be reversed if it was induced by an erroneous view of the law. Great A. & P. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 153-154, 71 S.Ct. 127, 95 L.Ed. 162; Caldwell v. Kirk Manufacturing Co., supra, 269 F.2d at page 508.

■ Article I, Section 8, of the Constitution, authorizes Congress to reward inventive genius by providing for the issuance of patents, but does not authorize the issuance of patents as a reward for mechanical skill alone. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58; Steffan v. Weber Heating & Sheet Metal Co., 8 Cir., 237 F.2d 601, 604.

■ While a presumption of validity of a patent arises from its issuance by virtue of 35 U.S.C.A. § 282, this presumption is rebuttable. The many cases cited and briefly discussed by Justice Douglas at pages 156–158 of 340 U.S., at page 132 of 71 S.Ct. of his concurring opinion in Great A. & P. Tea Co. v. Supermarket Equip. Corp., supra, clearly demonstrate that the presumption of validity has frequently been overcome in patent validity cases. Justice Douglas concludes his opinion as follows:

"The fact that a patent as flimsy and as spurious as this one has to be brought all the way to this Court to be declared invalid dramatically illustrates how far our patent system frequently departs from the constitutional standards which are supposed to govern."

The Supreme Court in the A. & P. case states that no precise test can be laid down for determining the validity of a patent. The court does state certain principles to be applied in determining patentability. Among them:

"The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devises patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics. * * *

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be· sustained when, on the con-

trary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. * * *" 340 U.S. at pages 152–153, 71 S.Ct. at page 130.

In Cuno Corp. v. Automatic Devices Corp. the court, in support of its decision holding a mechanical patent involving the aggregation of old elements invalid, concedes that the functions performed by the patented article are new and useful. After citing and discussing numerous authorities, the court states:

"Under the statute (35 U.S.C. § 31, 35 U.S.C.A. § 31, R.S. § 4886), the device must not only be 'new and useful', it must also be an 'invention' or 'discovery'. Thompson v. Boisselier, 114 U.S. 1, 11 [5 S.Ct. 1042, 1047, 29 L.Ed. 76]. Since Hotchkiss v. Greenwood, 11 How. 248, 267 [13 L.Ed. 683], decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. * * *" 314 U.S. at page 90, 62 S.Ct. at page 40.

This court has recently had occasion to review a number of claims to mechanical patents based upon an aggregation of old elements. Judge Sanborn in Caldwell v. Kirk, supra, and in his concurring opinion in Briggs & Stratton Corp. v. Clinton Machine Co., 8 Cir., 247 F.2d 397, 400, cites and analyzes the recent patent cases decided by the Supreme Court and this court, and points out that more exacting standards for determining patent validity have been applied by courts in recent decisions, and that many of the rules applied in the older cases are no longer followed. The patents involved in the cases just cited, covering an aggregation of old elements, were found to be invalid. Other recent cases in which we have held mechanical aggregation patents invalid for want of invention are John Blue Co. v. Dempster Mill Manufacturing Co., 8 Cir., 275 F.2d 668 (decided March 15, 1960); Johnson Fare Box Co. v. National Rejectors, Inc., 8 Cir., 269 F. 2d 348; Steffan v. Weber Heating & Sheet Metal Co., supra.

■ Plaintiff makes much of its claim of commercial success of its patented device. "Commercial success without invention will not make patentability." Great A. & P. Tea Co. v. Supermarket Corp., supra, 340 U.S. at page 153, 71 S. Ct. at page 130. See Jungerson v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S. Ct. 269, 93 L.Ed. 235.

■ We have carefully examined the trial court's findings of fact and conclusions of law and are convinced that the trial court in passing upon the validity of plaintiff's patent followed the proper applicable legal principles set out in the cases heretofore cited and discussed. This is illustrated by the following conclusions made by the trial court:

"VII. Even if the entire combination of Claims 3 and 10 is not present in any single patent, the claims are invalid because 'the differences * * * are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill' in the pertinent art, 35 USC 103. [Great] A. & P. v. Supermarket, 340 U.S. 147 [71 S.Ct. 127, 95 L.Ed. 162].

"VIII. Patentable invention cannot exist where the claimed invention attains no new result, has no new means, or has no new way of operating, beyond what the prior art teaches. Hydraulic Press Mfg. Co. v. Williams, White & Co., 165 F.(2d) 489, 494 (CA–7); Continental Farm Equip. Co. v. Love Tractor Co., 199 F.(2d) 202 (CA–8)."

The trial court's decision was not induced by any erroneous view of the law.

We now look to the evidence. Plaintiff's evidence in support of its claim of patentability is very meager. Defendant offered Don A. Fisher, Dean of the School of Engineering, Washington University of St. Louis, as an expert witness. He compared plaintiff's patent with the Fairchild Patent No. 1,035,780, issued August 13, 1917, covering a water fountain. He compared each element of Claim 10 of plaintiff's patent with the Fairchild patent and the other prior art, using models and charts to illustrate and explain his testimony. He testified that the Fairchild patent has all the elements of Claim 10 of plaintiff's patent operating in the same or equivalent ways to obtain the same result.

While some of the elements in plaintiff's device were arranged somewhat differently than in Fairchild, Dean Fisher testified that such changes required only the exercise of mechanical skill. It is clearly shown by the patents in evidence covering float valve devices and Dean Fisher's testimony, that the use of a float chamber controlled by a float valve is an old device used to maintain a steady hydrostatic head or liquid head over the outlet. Float controls are used in carburetors, oil burners, water fountains, and other devices for producing a more uniform flow. In like manner, the addition of a float chamber and the float valve mechanism to the syrup dispensing unit produced the anticipated result of causing an even dispensing of the syrup, which is the result forecast by the suggestion of Pepsi Cola and Coca-Cola that the float control be added. We have no doubt some skill is required to adapt a float control device to the syrup dispenser in that some experimentation with design and material was required to incorporate the float control in the dispensing unit in such a way as to accomplish the desired result. However, we believe that the record before us fully supports the trial court's determination that the use of the well-known float control device in a syrup dispensing unit was anticipated by the prior art, and that such addition called for the skill of a mechanic trained in the art rather than inventive genius.

Plaintiff stresses that its vent pipe is mounted on the removable platform separating the supply chamber from the float chamber, and that the vent tube extends above the syrup level and can serve as a convenient handle for removing the platform and other parts expeditiously for cleaning. Removable platforms exist in the prior art. Vent tubes are an essential element of a float controlled device. While the vent tube in Fairchild differs in location from that in plaintiff's device, vent tubes running upward from the platform are shown in the Miller and Grosswyler patents. The only significance of plaintiff's location of its vent tube is its contention that it can also serve as a handle to remove the partition. Plaintiff in its patent application did not set out that the vent tube could be so used. Dean Fisher concedes that the patent drawings disclose that the vent tube could be used as a handle. He further testified that if a handle is desirable to remove the partition, a handle could easily be attached to the partition for that purpose. We will assume, without so deciding, that the use of the vent tube as a handle was properly disclosed. Nevertheless, the court was entirely justified in finding from the evidence that there was no long felt need for a vent tube that could be used as a handle, and that in any event such a device would not constitute an invention.

There is substantial evidence to support the trial court's findings that plaintiff's claimed improvements were anticipated by the prior patents introduced in evidence, and that the improvements, if any, upon the prior art were the result of the application of skill of a mechanic trained in the art, and did not rise to the dignity of inventive genius.

Judged by the standards of patentability laid down in the cases heretofore cited, we conclude that the court's determination that the plaintiff's patent is invalid is supported by substantial evidence, and was not induced by any er-

roneous view of the law. The affirmance of the trial court's determination that the patent is invalid is decisive of this appeal and eliminates any necessity for consideration of other issues raised by the parties.

The judgment is affirmed.