JOHN DEERE COMPANY OF KANSAS CITY, a Corporation, and Deere & Company, a Corporation, Appellants,

v.

William T. GRAHAM, and Graham Plow, Inc., Appellees.

No. 17441.

United States Court of Appeals Eighth Circuit.

June 18, 1964.

Rehearing Denied July 13, 1964.

S. Tom Morris, of Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Tex., made argument for appellants and filed brief with Scofield, Kokjer, Scofield & Lowe, Kansas City, Mo.

Orville O. Gold, Kansas City, Mo., made argument for appellees and filed brief with Claude A. Fishburn, Kansas City, Mo.

Before VOGEL, MATTHES and BLACKBURN, Circuit Judges.

MATTHES, Circuit Judge.

This is an action for infringement of Patent No. 2,627,798 (hereinafter sometimes referred to as "Patent No. 798") issued to William T. Graham (plaintiff-appellee) on February 10, 1953, for a "Clamp for Vibrating Shank Plows." Graham Plow, Inc. (plaintiff-appellee) is a licensee under the patent. The trial court found the patent valid and that Claims 1 and 2 of the patent were infringed by defendants John Deere Company of Kansas City and Deere & Company. From the judgment entered pursuant to findings of fact and conclusions of law defendants (hereinafter called "appellants") have appealed.

Jurisdiction is established by virtue of 35 U.S.C. § 281 and 28 U.S.C. § 1338.

■ Appellants advance two basic contentions. (1) That Patent No. 798 is invalid for want of invention and that the finding for appellees on this issue is clearly erroneous because the trial court: (a) failed to give proper consideration and effect to the rule that the presumption of validity is weakened when pertinent prior art was not considered by the Patent Office; (b) applied an improper test of invention. (2) That even if validity of the patent is sustained, appellants' accused devices do not, within the rule or doctrine of equivalents, infringe Patent No. 798.[1] If appellants' position as to contention (1) is sound, i. e., if the Graham patent is invalid for want of invention, there can be no infringement of its claims and we need not consider contention (2). Selmix Dispensers, Inc. v. Multiplex Faucet Co. (Inc.), 8 Cir., 277 F.2d 884, 886 (1960); Caldwell v. Kirk Manufacturing Company, 8 Cir., 269 F.2d 506, 507 (1959), cert. denied, 361 U.S. 915, 80 S.Ct. 260, 4 L.Ed.2d 185 (1959); Briggs & Stratton Corporation v. Clinton Machine Co., 8 Cir., 247 F.2d 397, 400, 401 (1957), cert. denied, 355 U.S. 914, 78 S.Ct. 344, 2 L.Ed.2d 274 (1958).

■ Appellees urge and rely upon the uncontroverted rule, established by statute and consistently recognized by the courts, that a patent shall be presumed valid and that the burden of establishing invalidity of a patent shall rest on the party asserting it. 35 U.S.C. § 282; e. g., Radio Corporation of America v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 7–8, 55 S.Ct. 928, 79 L.Ed. 163 (1934); Steffan v. Weber Heating and Sheet Metal Company, 8 Cir., 237 F.2d 601, 602 (1956). It is equally clear, however, that the presumption of validity is a rebuttable one, that when substantial evidence attacking the validity of a patent is introduced, the question whether the patent constitutes an invention is for the court, Steffan v. Weber Heating and Sheet Metal Company, supra, 237 F.2d at 602; Continental Farm Equipment Co. v. Love Tractor, 8 Cir., 199 F.2d 202, 204 (1952), cert. denied, 345 U.S. 909, 73 S.Ct. 649, 97 L.Ed. 1344 (1953), and that the presumption of validity is weakened if applicable prior art is not considered by the Patent Office. L. S. Donaldson Company v. La Maur, Inc., 8 Cir., 299 F.2d 412, 420 (1962), cert. denied, 371 U.S. 815, 83 S.Ct. 27, 9 L.Ed.2d 57 (1962); Day-Brite

1. For a comprehensive and enlightening discussion of the doctrine of equivalents, see Parmelee Pharmaceutical Company v. Zink, 8 Cir., 285 F.2d 465, 470, et seq. (1961).

Lighting, Inc. v. Sandee Manufacturing Co., 7 Cir., 286 F.2d 596, 597 (1960), cert. denied, 366 U.S. 963, 81 S.Ct. 1925, 6 L. Ed.2d 1255 (1961); Cornell v. Adams Engineering Company, 5 Cir., 258 F.2d 874, 875 (1958).

If, as urged by appellants, the trial court failed to apply the proper legal test or standard, it necessarily follows that its finding of patentability was induced by an erroneous view of the law, its finding is clearly erroneous, and the judgment based upon such finding cannot stand. Great A. & P. Tea Co. v. Supermarket Equipment Corporation, 340 U.S. 147, 153–154, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Selmix Dispensers, Inc. v. Multiplex Faucet Co. (Inc.), supra, 277 F.2d at 886; Caldwell v. Kirk Manufacturing Company, supra, 269 F.2d at 508, 509.

■ This court has adhered to the position that since Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941), "the amount of originality and ingenuity, over and beyond novelty and utility, which will constitute invention necessary to sustain a patent for a combination of old elements [such as we have here] in a crowded art, has increased." Briggs & Stratton Corporation v. Clinton Machine Co., supra, (concurring opinion of Judge Sanborn, 247 F.2d at 401) and cases there cited. In Caldwell v. Kirk Manufacturing Company, supra, 269 F.2d at 509, Judge Sanborn again expressed the principle in this language:

"More exacting standards for determining patentable invention have been applied by the courts in recent years than was formerly the case. In Trico Products Corporation v. Delman Corporation, 8 Cir., 180 F.2d 529, 533, this Court said:

"* * * 'The Supreme Court has, we think, raised the standards of originality necessary to sustain patents for improvements such as those involved in the instant cases, regardless of their usefulness or commercial success. Compare, Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523, and Temco Electric Motor Company v. Apco Manufacturing Company, 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298, with Cuno Engineering Corp. v. Automatic Devices Corp., supra, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58.'"

The same pronouncement appears in Steffan v. Weber Heating and Sheet Metal Company, supra, 237 F.2d at 604; Selmix Dispensers, Inc. v. Multiplex Faucet Co. (Inc.), supra, 277 F.2d at 887; and Crome & Company v. The Vendo Company, 8 Cir., 299 F.2d 852 (1952), where Judge Blackmun in his dissent observed, "Mechanical combination patents in this court have met with little recent success."

With these pronouncements clearly in mind, we turn to the factual setting of the case. Inasmuch as the trial court's Memorandum Opinion, Findings of Fact, and Conclusions of Law, W.D.Mo., 216 F. Supp. 272 (1963), adequately embody the general factual background, including the terms of the patent claims and other technical descriptions, we need here set forth only a condensed version of the facts.

Appellee Graham originally submitted twelve claims in his application to the Patent Office for a patent on a device which eventually was issued as Patent No. 798. The Patent Office rejected all twelve claims, partially on the grounds that some of them failed to patently distinguish from a prior patent issued to Graham—No. 2,493,811 (Patent No. 811)—and partially on the grounds of lack of invention. Graham then submitted two claims to be substituted for the original twelve, and these two claims were the basis for issuance of the 798 Patent.

Broadly stated, Patent 798 relates to the mounting of tools on a frame which is moved over the ground to break the soil—a process termed "chisel plowing." Appellee Graham Plow, Inc.'s predecessor manufactured and sold chisel plows wherein the upper forward portion of the shank was rigidly fixed to the plow beam by a *rigid* clamp. Because these rigid

structures proved to be unsatisfactory due to their inability to withstand shocks when used for plowing in rocky country, Graham devised a *spring* clamp structure, and was issued a patent—No. 811— on it in January, 1950. Graham Plow, Inc. has continued to manufacture and sell plows with spring clamps which embody the principle of the 811 Patent, but neither appellees, nor any licensee under them, has ever manufactured or sold a clamp embodying the 798 structure.

The 798 clamp—also a "spring clamp" —is used to connect the upper forward end of a resilient shank to a beam with the lower end of the shank carrying a chisel for plowing or other ground-working operations. The clamp includes a body portion movably attached to the beam with a rearward portion having a pivot pin on which is pivotally mounted a movable part with a plate portion extending forwardly or longitudinally of the normal direction of travel of the plow. The upper forward portion of the shank extends through a stirrup or loop element at the rear of the movable part and longitudinally *beneath* the plate portion of the movable part and is connected to the plate at the forward end thereof at a substantial distance from the pivot pin, whereby the shank and movable part pivot together about the axis of the pivot pin. A coil spring is arranged at the forward end of the body and, through a nut, washer and spring rod, acts on the shank and plate member to resiliently urge the forward end of the shank and plate upwardly toward the body of the clamp to a stop engagement therewith to normally hold the shank in normal position. In plowing operations, forces are exerted rearwardly and upwardly on the chisel or other ground-working tool, and when sufficient to overcome the forces applied by the spring the shank and movable part will pivot on the pivot pin with the forward end of the shank and plate moving downwardly against the tension of the spring. Forces in plowing hold the shank against the rear of the plate of the movable part and when said forces are removed or lessened, or the ground-working tool removed from the ground, the shank at the rear of the movable part is supported by a stirrup or loop that embraces the shank adjacent the pivot of the movable part. In plowing operations, if the ground-working tool strikes a rock or other obstruction, substantial shock and forces are applied to the shank, pivoting the shank and movable member about the pivot pin, tending to compress the spring and permitting upward movement of the ground-working tool whereby it can pass over the rock or obstruction and, as it passes over such obstruction, the stirrup or loop on the movable part supports the shank against excessive rebound.

Five prior patents indicating the state of the prior art were made of record in the Patent Office during Graham's prosecution of the application for the 798 Patent. Four of these patents, ten others not of record in the Patent Office, and two other prior spring clamp devices not of record in the 798 file wrapper, were relied upon below by appellants as revealing the prior art.

Since our disposition of this case, as subsequently revealed, does not necessitate resolution of the infringement issue, we forego discussion of appellants' two accused devices, found to infringe Patent 798.

The following summarized findings of the trial court on the validity issue, among other findings and conclusions, induced the ultimate decision in favor of appellees:

(1) Although not all the now disclosed prior art was cited by the Patent Office, the statutory presumption of validity of the 798 Patent is not weakened or destroyed since the uncited prior art is "similar to some of the patents relied upon by the Patent Office Examiner."

(2) The prior art as a whole in one form or another contains all of the mechanical elements of the 798 Patent, and in a broad sense all of the elements are found in the Glencoe clamp. [Glencoe was not cited by the Patent Office]. Nevertheless, the particular arrangement of

the elements disclosed by 798 is not present in any single reference or as a whole.

(3) An *improved* functional result is obtained by the 798 Patent, and the main improvement is due to the particular arrangement of the shank in relation to the pivoted member and spring member which reflects in downward flexing of the shank at the forward portion thereof alongside the plate portion of the pivoted member and does lessen wear and tear to some parts of the clamp.

(4) The 798 Patent is an improvement patent and, while the individual mechanical elements may be found in the prior art, taken as a whole the 798 structure is sufficiently different in the operative relationship of the shank and pivoted member with a slight but significant difference in the flexing of the forward portion of the shank that is not found in the prior art, so that the 798 structure involves invention.

(5) The differences between the 798 Patent and the prior art are such that the 798 combination would not have been obvious at the time Graham made his invention to a person having ordinary skill in the art of agricultural implements and other related arts.

We approach determination of the validity issue fully cognizant that the mere fact that all of the elements embodied in the 798 structure are found in the prior art does not ipso facto mean that the combined structure is not patentable. Continental Farm Equipment Co. v. Love Tractor, supra, 199 F.2d at 205. However, we also announced in Continental, supra, 199 F.2d at 204, citing Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. at 152, 71 S.Ct. 127, that when combination patent claims are under examination, courts should scrutinize them with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. To be patentable, a combination of individually old elements must contribute something new; the elements must cooperate to produce an accumulation which exceeds the sum

of its parts. E. g., Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. at 151–152, 71 S.Ct. 127; Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008 (1938); John Blue Company v. Dempster Mill Mfg. Co., 8 Cir., 275 F. 2d 668, 672–673 (1960); Caldwell v. Kirk Manufacturing Company, supra, 269 F.2d at 508. Compare also, Powder Power Tool Corp. v. Powder Actuated Tool Co., 7 Cir., 230 F.2d 409, 415–416 (1956). Stated differently, "The bringing together of old elements in a mechanism involving no new principle, to produce an old result, however skillfully done, even though the result marks an advance in efficiency and utility, is but an exercise of mechanical skill and not invention." General Bronze Corp. v. Cupples Products Corp., 8 Cir., 189 F.2d 154, 161 (1951).

Our task is to first ascertain whether the trial court applied the proper legal standard in determining the validity of Patent 798, and then to decide whether the patent satisfies the requirements of this test. At this point, we note that the 798 Patent has been held valid on two occasions in appeals before the Fifth Circuit. Jeoffroy Mfg., Inc. v. Graham, 219 F.2d 511 (1955), cert. denied, 350 U.S. 826, 76 S.Ct. 55, 100 L.Ed. 738 (1955), and Graham v. Cockshutt Farm Equipment, Inc., 256 F.2d 358 (1958). Unlike our court, the Fifth Circuit has "long recognized * * * that an improvement combination is patentable even though its constituent elements are singly revealed by the prior art, where * * * it produces an *old result in a cheaper and otherwise more advantageous way*." (Emphasis supplied). 219 F.2d at 519. For other recognition by the Fifth Circuit of the "old result in a more efficient and economical way" see, Cornell v. Adams Engineering Company, supra, 258 F.2d at 875–876.

Undoubtedly, and perhaps understandably, the trial court below was at least partially motivated in its decision by the two prior Fifth Circuit cases involving Patent 798. Of course, the de-

**534**

cisions of another circuit are entitled to respect and are not to be brushed aside lightly, but they are not binding upon appellants in this case, nor upon us. See Aeration Processes v. Lange, 8 Cir., 196 F.2d 981, 982 (1952), cert. denied, 344 U.S. 834, 73 S.Ct. 43, 97 L.Ed. 649 (1952). It is for this court, upon the record here, including the arguments, stipulations, and concessions, to decide whether Patent 798 is valid.

Here, the trial court couched its Finding XV rather precisely in the statutory standard of invention found in 35 U.S.C. § 103, and found that the 798 Patent structure would not have been obvious at the time it was made to a person having ordinary skill in the art. But, other findings of the court lay stress on "an *improved* functional result," and nowhere does the court find any new or significantly different result. Seemingly, the trial court failed to apply the more exacting standard which in our view is implicit in the teachings of the Supreme Court in Cuno Engineering Corporation, supra, 314 U.S. 84, 62 S.Ct. 37 and Great A. & P. Tea Co., supra, 340 U.S. 147, 71 S. Ct. 127, and which we have applied in numerous cases subsequent thereto.

Furthermore, even assuming that the trial court's finding of "a slight but significant difference in the flexing of the forward portion of the shank that is not found in the prior art" can be construed as a finding of a new result, the court's further finding that Patent 798 exhibits invention and would not have been obvious to a person having ordinary skill in the art is clearly erroneous. The alleged patentable difference between the 798 structure and the prior art lies in the arrangement in the 798 structure of the shank *below* the plate of the pivoted member, permitting the shank to flex throughout its length and particularly

permitting the forward portion of the shank to flex downwardly *away* from the plate. Theoretically, at least, when the plate is below the shank, as in the prior art, there is a tendency of the shank to bend *against* the plate and when the plate is above, as in the 798 Patent, there is a tendency of the shank to bend *away from* the plate.

But is this difference significant enough to support the patent? We think not. Painstaking examination of the entire record, including the testimony of the experts, convinces us that the changes in the prior art embodied in the 798 Patent involve only application of mechanical ability, and that there is no adequate evidentiary support for the trial court's finding of invention. As surely as the disc harrow device in Continental Farm Equipment Co. v. Love Tractor, supra, 199 F.2d 202, and the animal rubbing and oiling apparatus in Caldwell v. Kirk Manufacturing Company, supra, 269 F. 2d 506—to name but two, did not involve inventive genius, neither does the rearrangement of shank, plate and pivot pin in the 798 structure. While perhaps more efficient, the inversion of the parts so as to allow the shank to flex downwardly away from the plate above it did not bring about a significantly new or different result, and would have been obvious to a person having ordinary skill in the art.

Additionally, it is significant that in the 798 Patent claims, nothing is mentioned about the shank flex which became the basic reason for sustaining the validity of the patent in the trial court. To be sure, it is the claim that measures the grant to the patentee, Briggs & Stratton Corporation v. Clinton Machine Co., supra, 247 F.2d at 400, and here the claims of the 798 Patent are silent concerning the alleged flex.[2] Appellants point out

---

2. In Lincoln Engineering Co. v. Stewart-Warner Corp., supra, 303 U.S. at 550, 58 S.Ct. at 665, the Supreme Court, in refusing to accept a suggestion that a function, not mentioned in the specifications of the patent, was significantly new and different so as to support the validity of the patent, stated:

"The suggestion seems to be an afterthought. No such function * * * is hinted at in the specifications of the patent. If this were so vital an element in the functioning of the apparatus it is strange that all mention of it was omitted."

that, to the contrary, any flexing of the shank away from the plate portion of the pivoted member would be in direct conflict with the claims which specify that the means connecting the shank to the plate maintain "the upper face of the shank in *constant continuous* contact with the underface of said plate portion of the shank attaching member." (Emphasis supplied).[3] See entire claims set forth, supra, 216 F.Supp. at 274–275.

It is also interesting to note that in the early stages of this case appellees propounded three interrogatories under Rule 33, Fed.R.Civ.P., inquiring as to flex in the shank of appellants' accused devices. Appellants objected on the grounds that the interrogatories were not relevant, and Judge Ridge—then sitting on the case— sustained the objections, stating:

> "These interrogatories relate to a flexing of the shank of the accused device, and appear irrelevant since such a flexing is not a claim of the patent in suit and Plaintiffs do not undertake to otherwise demonstrate the relevancy of such inquiry."

■ In conclusion, we observe once again that the Constitution, Article I, Section 8, Clause 8, authorizes Congress to reward inventive genius but not mechanical skill alone. Cuno Engineering Corporation v. Automatic Devices Corporation, supra, 314 U.S. at 91, 62 S.Ct. 37; Steffan v. Weber Heating and Sheet Metal Company, supra, 237 F.2d at 604. The public is a silent but an important and interested party in all patent litigation, and is entitled to protection against the monopolization of what is not lawfully patentable. Rota-Carb Corporation v. Frye Manufacturing Company, 8 Cir., 313 F.2d 443, 444 (1963). For a recent

discussion of the purpose of federal patent law and the need to guard the rights of the public, see Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 228–231, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964).

■ Since we have concluded that the 798 Patent is invalid, there is obviously no need to consider the infringement issue.

Accordingly, and for the reasons stated in the opinion, the judgment is reversed and the case remanded with directions to dismiss the action.

---

3. Appellees take issue with this assertion, stating that appellants "are interpreting the wording of the claims to specify that the contact between the upper face of the shank and the under face of the plate portion is for the entire length of those faces, but the claims do not say that. *There is no extent of such contact specified in the claims.* Actually in the structure the bolt and nut at the forward end of the plate and shank maintain the upper face of the shank in constant continuous contact with the under face of the plate portion of the shank-attaching member at that part where the bolt and nut pass through. * * * The flexing is in that portion of the shank that is rearwardly of that bolt. * * * " (Emphasis supplied).