The GRAND UNION COMPANY and North American Equipment Corporation, Plaintiffs,

v.

KINGSTON MANUFACTURING CO., Inc., and Gardner I. Hinckley, Defendants.

Civ. A. No. 2338.

United States District Court
D. New Hampshire.

Oct. 21, 1968.

Arthur A. March, Douglas W. Wyatt, March, Gillette & Wyatt, New York City, Gerard O. Bergevin, Manchester, N. H., for plaintiffs.

Stanley M. Brown, McLane, Carleton, Graf, Greene & Brown, Manchester, N. H., Robert A. Townsend, Roberts, Cushman & Grover, Boston, Mass., for defendants.

McNICHOLS, District Judge.

This matter came on for trial at Concord, New Hampshire, on September 18, 1967, the Court sitting without a jury. Evidence oral and documentary was taken, and time afforded for post-trial briefs after preparation of a transcript of evidence by the Court Reporter. The cause is now submitted with a reservation of the issue of damages, if any.

Plaintiffs' action is for patent infringement and unfair competition. Defendants attack, by answer and counterclaim, the validity of certain of the patents, deny infringement as to all, and deny the alleged unfair competition.

Jurisdiction is laid under 28 U.S.C. § 1338, as an action relating to patents and the related claim of unfair competition.

Plaintiffs, Grand Union Company (hereinafter "Grand Union"), is the parent company to its totally owned subsidiary, plaintiff, North American Equipment Corporation (hereinafter "North American"). It is conclusively shown that Grand Union is the owner, by assignment, of the patents in question and North American, the licensee. Defendant, Kingston Manufacturing Co., Inc. (hereinafter "Kingston"), operates a metal fabricating business and has, since approximately 1961 or 1962, engaged in the manufacturing and selling of certain metal shelving devices claimed to infringe on said patents. The defendant, Gardner I. Hinckley (hereinafter "Hinckley"), is a former employee of North American, who subsequently, and during times important hereto, became an employee of Kingston.

Three of plaintiffs' patents are involved and are listed chronologically:

1. Patent No. 2,443,871, issued to L. P. Shield, June 22, 1948, entitled "Display and Delivery Device". A certified copy of this patent, designated as plaintiffs' Exhibit No. 3 and a certified copy of the file wrapper thereof, designated as defendants' Exhibit No. XX were admitted in evidence. This patent was, at the trial, and will be here, generally referred to as the Shield Patent. By stipulation the plaintiffs rely only on Claim 5 of the Shield Patent. It is to be noted that this patent expired on its anniversary date in 1965, prior to this trial.

2. Patent No. 2,669,361, issued to G. A. Just, February 16, 1954, entitled "Display and Delivery Stand". A certified copy of this patent, designated plaintiffs' Exhibit No. 1, and a certified copy of the file wrapper thereof, designated as defendants' Exhibit YY were admitted in evidence. This patent was, at the trial, and will be here, generally referred to as "Just First". By stipulation the plaintiffs rely only on Claim 9 of the Just First Patent. It is to be noted that defendants do not challenge the validity of this patent, contenting themselves with denying infringement.

3. Patent 3,091,317, issued to G. A. Just, May 28, 1963, entitled "Display and Delivery Stand". A certified copy of this patent, designated as plaintiffs' Exhibit No. 2, and a certified copy of the file wrapper thereof, designated as defendants' Exhibit ZZ, were admitted in evidence. This patent was, at the trial, and will be here, generally referred to as "Just Second". By stipulation the plaintiffs rely only on Claim 2 of the Just Second Patent. It is to be noted that this patent was issued after the commencement of this action and was included herein by an amendment to the complaint.

The evidence establishes the following background of events leading to the litigation: North American (and its predecessor company, "Food-O-Mat Corporation") had, for a number of years prior to 1962, been engaged in the sale and installation of gravity type display and delivery shelving utilizing generally the designs of Shield and Just described in the patents in question. The largest market for this shelving as sold by North American was in the retail grocery trade, with the parent company having numerous installations in its retail outlets (Grand Union Stores). For many years up to this time Kingston was a principal supplier of component parts of the shelving so utilized by the plaintiffs. A long, friendly, co-operative and apparently mutually advantageous relationship had existed between Kingston and North American. During the days of development of the display and delivery shelving, Kingston's technical know-how was applied to North American's experienced problems in the field. Improvements were regularly designed by Kingston and embodied into the North American product.

In 1954, Hinckley joined North American as a salesman; in 1956 or 1957, he became vice-president, apparently in charge of sales. He resigned in December, 1960 and went to work for Kingston in a sales-executive capacity. During Hinckley's years at North American the display and delivery shelving sales were roughly 80% to retail business and 20% to commercial. In 1960, Mr. Shield (of the Shield Patent) died and Mr. Just (of the Just Patents) retired. Shield had wielded influence in the plaintiff companies and had insisted on the use of the gravity shelving devices in all Grand Union Stores. After the death of Shield and upon the retirement of Just the research and development people employed by North American were "let out". Rumors were rife that the company was for sale. Hinckley felt that the great potential of the live storage shelving business lay in the development of the commercial field. He was justified in believing that North American would not likely move forward into this market. Kingston, on the other hand, was about to enter into the live storage shelving competition and offered Hinckley employment. He accepted the opportunity even though it entailed a substantial reduction of personal income. Hinckley very properly, and for no wrongful purpose, left a company where the future was at least obscure to go with a company about to enter into a market where Hinckley felt a favorable opportunity existed.

With the know-how of Kingston's engineers, competitive live storage shelving was developed and Hinckley set up a sales program to merchandise the devices. Kingston, in 1962, secured patents covering its rack and trackway used in its live storage shelving to be merchandised under the trade name of "King-Way." These patents were Nos. 3,040,904 and 3,063,534. Conscientiously, Hinckley avoided interfering with any sale to any customer where negotiations had been commenced during his tenure with North American. This was a highly competitive business with many types of equipment on the market and with well known and published listings of potential customers readily available. No proof exists that Hinckley or Kingston, in their sales approach, were anything but scrupulously fair to North American. However, they did concededly enter into competition in the manufacture and sale of live storage shelving. Plaintiffs promptly advised defendants that it considered the devices being merchandised by Kingston under the trade name "King-Way" infringed on plaintiffs' patent rights. Kingston persevered in its program and this action ensued.

## UNFAIR COMPETITION

In Count II of the complaint, plaintiffs state a claim against the defendants alleging unfair competition. At the close of all evidence, the Court orally found against the plaintiffs on this cause. Subsequently a formal Interlocutory

Order was entered, supported by Findings of Fact and Conclusions of Law, dismissing Count II. Said Interlocutory Order and its Findings and Conclusions are, by reference, incorporated herein. Said Order is affirmed as entered.

## SHIELD PATENT

The Shield Patent, No. 2,443,871, held by the plaintiffs, expired on June 22, 1965. We are here limited in our concern to claim No. 5 of this patent, which claim reads as follows:

"5. A merchandise display and delivery stand comprising upwardly extending supports, rectangular frames secured in vertically spaced relation and in inclined positions on said supports and each having opposite horizontally extending portions, a plurality of inclined shelf forming means supported adjacent their opposite ends by the horizontal portions of said frames, each of said shelf forming means including article supporting means and a pair of spaced article guiding elements cooperating with said article supporting means to form parallel inclined channels for maintaining articles in alignment during movement thereof from the rear to the front of said shelf forming means, said shelf forming means being adjustably secured to said frames by interengaging parts movable to hold said article guiding elements in various predetermined positions with respect to each other to guide articles of predetermined sizes, said channels being accessible at the rear of said stand for receiving articles and accessible at the front of said stand for the removal of articles from said channels, the front ends of said channels extending progressively farther forward from the upper to the lower portion of the stand and means engageable by the foremost article in each channel for holding articles in place in said channels."

The claim in question thus embodies the framework supporting shelving as well as the shelving itself. The shelves, or tracks, rest on the framework in an inclined position toward the front so as to utilize gravity to cause items inserted from the rear to roll or slide forward. As items are removed from the front, those behind move into position creating the so-called "live storage" feature. The design of the shelves or tracks tends to keep items in alignment while so moving. Provision is made for the shelves or tracks to be secured to the framework of the structure at predetermined spacings to accept articles of various sizes for storage and display.

Plaintiff's expert witness, Sperry, who aided in the prosecution of the Shield Patent application before the Patent Office, described this patent as the "parent patent" of the plaintiffs' line of live storage display shelving. A quotation from his testimony serves best to establish the basis of the invention claimed by the plaintiffs:

" * * * [T]here is no single element in the Shield patent which gives to the combination itself novelty. It is rather the relationship and association and the cooperative functional organization of the elements which are believed to be new as patentable, and that is the subject matter to which claim 5 is directed." (Sperry, transcript of evidence, page 600.)

Defendants' expert witness, Chittick, fully examined, compared and reviewed the numerous patents alleged to deal with the subject matter involved as part of his testimony. He included in his review the 1929 patent to Short (No. 1,711,329) and the 1939 patent to Bauer (No. 2,173,152) in addition to those cited by the Patent Office. He was then of the opinion:

(a) that the Shield Patent was an old combination as shown by the prior art; (b) that the combination was fully anticipated by the prior art and (c) that with the prior art available a person skilled in the art could easily devise a construction that would meet every limitation appearing in claim 5 of the Shield Patent.

Sec. 102, Title 35, U.S.Code, denies patentability to purported inventions anticipated by the prior art. Sec. 103 of the same Title bars issuance of a patent if the difference between the subject matter offered for patent and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains.

 It is clear that we deal here with a so-called "combination patent". A combination of elements, old themselves in the art, but which in combination produce some new and useful result in substantially a new way, or perform a different function in combination from that performed as individual elements, may very well be patentable. Deller's Walker on Patents, Second Edition, Vol. 4, Sec. 253, page 149. However, there must in truth and fact be created a new, different and additional function or a new or different result. Mere expected improvement in efficiency is not sufficient to sustain patentability. Continental Connector Corp. v. Houston Fearless Corp. (C.A. 9, 1965), 350 F. 2d 183.

In determining the existence of the requisite patentability of a combination patent, the trier of fact is adjured by the U. S. Supreme Court to apply the following principles:

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skill-

ful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly." (Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147 at pp. 152, 153, 71 S.Ct. 127 at p. 130, 95 L.Ed. 162).

The prior patents considered by the Patent Office when the Shield application was under consideration as well as the additional patents also relied on by the defendants as prior art, are all for shelf type display racks. They obviously deal with the same subject matter as did Shield. Within the four corners of these referenced patents are all of the elements incorporated into the Shield claim. The ultimate function of Shield's patent is fully disclosed in the aggregate of the prior art as produced in evidence.

The means of constructing a live storage delivery and display rack or stand with rear loading; utilizing adjustable width track type shelves so forward inclined as to furnish a gravity system of moving boxes, cans, bottles and other like items to the front of the shelving, providing for a system of guidance elements to align the items while moving on the tracks, and being adjustable to permit various sizes of items, are clearly taught in the prior art. The combination of old elements developed by Shield and claimed to be patentable produces no unusual, new, additional or different result. His display and delivery stand may be an improvement on the older combinations, but it misses the mark of patentability.

 I am not unmindful of the presumption favoring the validity of the patent nor of the heavy obligation of the defendants to prove invalidity by clear and convincing evidence. 35 U.S.C. § 282. However, here it is not disputed that the elements of the patent under attack are old in the art and that the existence of an invention must rely on new and different results from combining

such elements. The proof is overwhelming that no such new or different results were obtained. The combination of old elements produced, albeit perhaps with greater efficiency, the identical results taught in the old art.

It is also clear that an artisan reasonably skilled in the live display shelving field, having available to him the prior art, would have no trouble in producing a structure that would embody all of the elements of plaintiffs' structure as claimed under the Shield Patent.

■ I therefore conclude that the Shield Patent is invalid (1) as being anticipated by the prior art and thus by failing to meet the requirements of patentability under 35 U.S.C. § 102; and (2) for failure to meet the "non-obviousness" test of 35 U.S.C. § 103.

As the claim alleged to have been infringed is invalid, it follows that defendants' structure could not and did not infringe on claim No. 5 of the Shield Patent.

## JUST FIRST PATENT

Patent No. 2,669,361, the Just First Patent, is owned by the plaintiffs and expires February 16, 1971. We are concerned only with claim No. 9 of this patent which reads as follows:

"9. In a display and delivery device a pair of tracks for supporting and guiding articles for movement along said tracks, each of said tracks being formed with two longitudinally extending rails one of which rails is higher than the other, said rails being connected by a web located below the upper edges of both rails, said tracks further being formed with flanges extending substantially at right angles to said rails near the lower edges thereof for engagement with track positioning members."

The validity of this patent is accepted by the defendants and only the issue of infringement is before me.

Just First, it is tacitly agreed, is directed to the construction of a pair of tracks for use in a display and delivery stand. Since the tracks are identical, but used as a pair, the discussion of an individual track will suffice. The claim calls for each track to have a high and low rail joined by a web or connecting metal piece and with inward turned flanges at the bottom to engage with a track positioning member.

The track can be fabricated as one rolled shape. Two potential arrangements are possible, i. e., the tracks could be so juxtaposed as to have the two lower rails of the pair in proximity, in which case the higher rails are to the outside, or, by reversing the pair of tracks, the two higher rails are toward the inside. In use, when the lower rails are nearest one another, cans, bottles or rounded items can slide on the line surfaces of the rounded lower inner rails; space between the rails being adjusted to the various sizes of items. Also in this position boxes or other rectangular items can move on the surface of the lower rails and the higher, and in this position outer, rails serve as a guide for alignment. When large cylindrical items are to be moved on the tracks, the higher rails are placed inward by the reversing process and can again be adjusted to accommodate various sized larger items.

As used by the defendants, the alleged offending structure is likewise composed of a pair of tracks, identical in shape to one another, used as a part of a display and delivery stand, and designed for facilitating the movement of either cylindrical or rectangular items from the rear of the stand to the front. The structure, as designed and used by the defendants, has only one rail and is a hollow box having the cross section appearance of a right angle. Defendants' track is so constructed as to permit the single rail to be either in a low or higher position depending on which surface is downward. By turning the track through 90° the single rail assumes either the low or the high position. When used for smaller cylindrical or for rectangular items the track is

rotated so that the two lower rails of the pair of tracks are in the center, nearest one another, and in such case a guide flange is to the outside on each side of each track to form an aligning guide for rectangular items which rest on the lower rails. In this position the space between the pair of tracks can be adjusted to accept various sizes of items; the then bottom area of the track being attachable by way of keyhole type slots to track positioning members. When rotated 90° the outer side of the guiding flange becomes the base and the former low rail is exposed in the higher position. Again in the now bottom area of the track keyhole slots are fashioned to attach the track positioning members so that various sizes of items can be accommodated depending on the predetermined adjustment of space between the rails of each track.

As might be anticipated, the expert witness for the plaintiffs testified that each and every element of claim No. 9 of Just First is found in defendants' structure in the same relationship and functional assembly and therefore infringes the same. And, as might equally well be anticipated, the expert witness for the defendants testified that the defendants' structure does not come within the disclosure of the claim of the Just Patent, cannot be considered the equivalent thereof, and that it functioned in a different manner, and that there is not therefore an infringement.

That the use of rails as such for the easy passage of objects from one point to another is old and well known goes without saying.

Indeed most of the prior art referenced in this entire case reflects the use of one type or another of a rail or track structure, utilizing U-shapes, V-shapes, and single right angle shapes and combinations thereof.

It is therefore the novelty and the versatility of function of the track assembly of Just which provides patentability.

Plaintiffs oversimplify when they attempt to literally read defendants' structure on claim 5 of Just First. Defendants have a single rail design, while plaintiffs have two rails, one high and one low. Defendants' key slot openings are not literally the same flange arrangement expressed by Just. It cannot be said that the accused structure falls clearly within the claim. This of course is not determinative of the issue of infringement—we must determine if defendants' structure is essentially equivalent to that of the plaintiffs. A mere change of form does not avoid an infringement.

The most authoritative teaching of the so-called "doctrine of equivalence" is found in Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605 at 609, 70 S.Ct. 854 at 856, 94 L.Ed. 1097:

"What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect. In determining equivalents, things equal to the same thing may not be equal to each other and, by the same token, things for most purposes different may sometimes be equivalents. Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was.

"A finding of equivalence is a determination of fact. Proof can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the

disclosures of the prior art. Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence. It is to be decided by the trial court and that court's decision, under general principles of appellate review, should not be disturbed unless clearly erroneous. Particularly is this so in a field where so much depends upon familiarity with specific scientific problems and principles not usually contained in the general storehouse of knowledge and experience."

Applying the broad brush strokes of *Graver* to the facts of this case, I am constrained to hold that defendants' track device is not equivalent to that claimed in Just First.

As a point of beginning, I find the use of rails and tracks for the movement of items such as contemplated here is old in the prior art. This is a crowded field in which many improvements have been developed over the years.

Just has improved on older systems by developing a two-rail track consisting of a high rail and a low rail on each track to be used as a pair with an identical track. Each track is open at the bottom with internally turned flange parts. The rail is so designed that it can rest on a shelf assembly only on a single base or bottom and this portion of the track is attachable to the position fixing device by the flanges so running the full length of the track. To change the position of the rails so as to place either the short rails nearest one another or to place the high rails nearest the track must be turned end for end or leap-frogged. When the pairing is adjusted so that the lower rails are nearest one another, the higher rail acts as a guide for rectangular items and the small rounded items are also accommodated. When the high rails are nearest, larger rounded items are handled with consequent greater clearance provided above the display assembly to allow for the greater arc of the larger rounded items.

Defendants also undertook to develop a track arrangement superior to the old art. Defendants conceived a device where a pair of single rail tracks, each basically in the form of a box having the configurations of a simple angle iron was utilized. A railhead is fashioned on the extremity of one leg of the angle on each track. The other extremity is in a squared off shape. On each of the outward walls of the box shaped right angle track are placed keyhole type slots designed to accept the needed spacers to establish predetermined gaps between the tracks making up the pair. When the track is laid so that the outer wall having the leg with the rounded rail is on the base or bottom, the rail is in the low position and the track will accommodate rectangular or small rounded items with a guide flange on the outer side of the rail to keep rectangular items in alignment. When the tracks are rotated through 90°, the opposite outer wall is downward as the base or bottom of the track and the same single rail of each track is in the higher position to handle larger rounded items. In either position, a set of keyhole slots is available on the bottom of the track for affixing to a spacer or stringer to provide positioning of the tracks.

Considering the crowded state of the prior art; the single rail in defendants' structure in the place of two separate rails in that of the plaintiffs; the total difference in the methods of attachment of the tracks to the spacing devices; and the different method involved to provide the rail surfaces, I am compelled to the holding that the defendants' track is not equivalent to that found in claim 5 of Just First.

Some comfort and support is taken by the Court from the fact that the Patent Office apparently took the view that there was a patentable difference between the parties' structures. It is clear that defendants' track is that disclosed in the St. Amour Patent, No. 3,063,534, issued April 21, 1961. While the Court recognizes that there is no well established presumption that a sub-

sequently granted patent does not infringe the earlier patented invention, yet when, as here, the Just First Patent was recited by the Patent Office in the St. Amour Patent, it is logical to give some weight to the action of the Patent Office.

I therefore conclude that the plaintiffs have failed to prove that the defendants' structure infringes on the Just First Patent, and specifically on claim 5 thereof.

## JUST SECOND PATENT

Patent No. 3,091,317, the Just Second Patent, is owned by plaintiffs and expires May 28, 1980. We are concerned only with claim No. 2 of the patent which reads as follows:

"2. In an article-supporting stand, a pair of tracks formed of material of predetermined thickness and arranged in parallel relation and in inclined positions on said stand and track spacing means extending transversely of said tracks beneath the same and detachably engageable with the tracks intermediate the ends thereof to hold the tracks in predetermined spaced relation, said track spacing means being in the form of an elongated strip of material presenting an upwardly facing track-supporting surface with track-holding elements integral therewith and struck up above said upwardly facing track-supporting surface of the strip, the extremities of said track-holding elements facing outwardly in opposite directions toward the opposite ends of the strip, said extremities of the track-holding elements being spaced from the upwardly facing track-supporting surface of said strip a distance at least equal to said predetermined thickness of the material of which said tracks are formed, each of said tracks presenting opposite side portions having a downwardly facing opening therebetween, the side portions of the track presenting spaced inwardly and oppositely extending flanges at the lower edges there-of, said flanges resting upon the upwardly facing track supporting surface of the track spacing means and projecting beneath the outwardly extending extremities of said track-holding elements."

Insofar as the claim describes the construction of a pair of tracks for a display stand, it is conceded that such tracks are those of Just First. It is the track spacing device and its use in conjunction with the Just First tracks which plaintiffs contend is disclosed by the patent and infringed by the defendants. In the application before the Patent Office, the applicant revealed the spacing device originally contemplated for use in the Just First Patent had proved inefficient. That spacing device had necessarily to be inserted at the ends of the pair of tracks and this was found in use to be a decided limitation. A spacing device was therefore needed which could be inserted between the pairs of tracks at any point along the length thereof. In the application the described method of insertion of the spacer was by spreading the rails apart, inserting the spacer so as to clip the spacer to the rails with a spring action. Oddly enough the claim in question makes no provision for the snapping or springing method of insertion. It is also to be noted that the alleged offending track and spacer utilization of the defendants has no capability so far as spreading the tracks to snap in the spacer is concerned.

With the foregoing out of the way, let us examine the construction and use of the spacer as read from claim 2 of Just Second. It will be remembered that the pair of Just First tracks, to be used with the Just Second spacer, are each open at the bottom for the full length of each track with an in-turning flange found at the lower end of the side wall of each rail. This flange is designed to engage the spacer device. The spacer of the claim in question is a strip of stiff material with sets of up-struck tabs facing in the opposite direction from one another. These tabs engage the above-

referred to flanges on each side of each of the pair of tracks. The tracks then rest on the strip of material and the engaged tabs hold the pair of tracks the predetermined distance apart. Since the tabs engage from each direction, the tracks can neither move closer together nor further apart. This result had, of course, been achieved also by the type of spacer inserted from the ends of the pair of tracks as used in Just First. However, the spacer of Just Second is insertable at any point along the length of the track and it is this feature which Just Second sought to achieve.

■ Our attention then is now to be directed to the question of the validity of the patent. The patent enjoys a statutory presumption of validity and the defendants are saddled with the burden of overcoming such presumption. 35 U.S.C. § 282. However, it is well established that such presumption is rebuttable and when substantial evidence attacking the validity of the patent is presented the question of patentability becomes one for the Court. John Deere Company of Kansas City v. Graham (8 C.A., 1964), 333 F.2d 529, affirmed 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545. Statutory elements required as conditions of patentability, i. e., novelty, utility and nonobviousness are set out in 35 U.S.C. §§ 101, 102 and 103. The defendants contend that the spacer of the plaintiffs as designed to function is old in the art and obvious to one reasonably skilled therein. A number of references to the old art are cited.

"* * * Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. * * " Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1965).

The utilization of spacers or sleepers to hold tracks or rails in predetermined parallel positions is of course a part of ancient art. The use of struck up parts on metal strips to engage the lips or flanges or lugs of other metal framework is likewise old in the art. Among the patents referenced by the defendants clearly showing such use is the patent to Nellis—No. 933,328, going back to 1909. The use of struck up flanges to hold rails to metal supports to maintain the positioning of the rails is demonstrated in the patent to Moxham—No. 505,988, issued before the turn of the century (1893). Neither of these was cited by the Patent Office in the Just Second patent proceedings.

When you reduce the alleged invention of claim 2 of Just Second down to the ultimate element relied on for patentability, that is the spacer, and its proposed combination with the specific track of Just One, you find you have a metal strip to function as a spacer or stringer to keep a pair of tracks aligned. Certainly this is not in itself a novel or unknown or unobvious idea or construction. This spacer is intended to fasten two pieces of metal together by the expedient of up struck portions (tabs, lugs, hooks or whatever they may be called) designed to close over or contact a flange or turned down portion of the other piece of metal. Again this method of fastening one metal piece to another is not novel, unknown, or unobvious. It appears to me that given the problem one with ordinary skill in the art could easily reproduce the spacing structure Just describes in claim 2. Nor can this combination of old art be said to function in such a relationship as to have the novelty necessary to patentability. I am at a loss to know how the examiner originally found the application to encompass an invention. The file wrapper shows that he three times rejected all of the claims presented. The attorney for the applicant, Albert Sperry, who also was plaintiffs' expert witness in this trial, apparently persuaded the examiner

that his amended claims presented a patentable device. This although the amendments were more a matter of semantics than change in design. His final argument in prosecution of the amended claims urges that what is now claim 2 of Just Second was a combination and arrangement of elements believed to be new and patentable and distinguishable over Just First and other references cited by the examiner. The examiner apparently gave up and allowed the two amended claims without further action.

■ At any rate, applying the teaching of Graham v. John Deere Co., supra, I am fully persuaded that the evidence overwhelmingly shows that the purported invention set out in claim 2 of Just Second was not patentable as being old in the art and obvious. I conclude that the Just Second Patent is invalid, and therefore not infringed.

## SUMMARY

Since the Court has found and concluded that Shield claim 5 and Just Second claim 2 are invalid and thus not infringed by the defendants and that Just First claim 9 is not infringed by the defendants, it follows that on the infringement suit plaintiffs have failed to make out a cause of action and judgment must be for the defendants. As there was no direct infringement proved as to Kingston, the allegation that the defendant Hinckley induced Kingston to infringe likewise fails.

Judgment should now be entered for the defendants on Count I of the Complaint. The Court has heretofore entered an Interlocutory Order in favor of the defendants on Count II. Final Judgment for the defendants on both counts should now be entered.

This Memorandum Decision will constitute the Court's Findings of Fact and Conclusions of Law as permitted under Rule 52, Federal Rules of Civil Procedure.

Counsel for the defendants will prepare, serve and lodge a proposed form of final Judgment within ten days of the receipt hereof.

## FINAL JUDGMENT

This action having come for trial on September 18, 1967, and the Court having filed Interlocutory Findings and Conclusions on November 1, 1967, and a Memorandum Decision on October 21, 1968, it is

Ordered, adjudged and decreed that:

1. Plaintiffs' Shield patent No. 2,-443,871 is not infringed by defendants' live storage shelving.

2. Claim 5 of plaintiffs' Shield patent No. 2,443,871 is invalid and void, both under 35 U.S.C. § 102 and under 35 U.S.C. § 103.

3. Defendants' track structure does not infringe plaintiffs' Just patent No. 2,669,361.

4. Defendants' track structure does not fall within claim 9 of plaintiffs' Just patent No. 2,669,361.

5. Defendants' track structure is not equivalent to that of claim 9 of plaintiffs' Just patent No. 2,669,361.

6. Plaintiffs' Just patent No. 3,091,-317 is not infringed by defendants' track structure.

7. Claim 2 of plaintiffs' Just patent No. 3,091,317 is invalid and void, both under 35 U.S.C. § 102 and under 35 U.S.C. § 103.

8. Plaintiffs' first cause of action (Count I of the Complaint and Supplemental Complaint) is dismissed with prejudice.

9. Defendants Kingston Manufacturing Co., Inc. and Gardner I. Hinckley have not, either jointly or severally, committed any acts of unfair competition against plaintiffs.

10. Plaintiffs' second cause of action (Count II of the Complaint) is dismissed with prejudice.

11. Plaintiffs' Complaint and Supplemental Complaint are dismissed with costs to the defendants to be taxed by the Clerk.